# STATE v. WILLIAM J. ABDO.[1]

## June 3, 1921.

## No. 22,167.

**Homicide — defendant entitled to submission of manslaughter in second degree.**

1. If the facts proved under an indictment for murder in the first degree warrant a conviction of manslaughter in the second degree, the defendant upon request is entitled to the submission of such degree of manslaughter

**Same — theory of charge to which defendant was entitled.**

2. The defendant was convicted of manslaughter in the first degree under the statute defining manslaughter in the first degree as an unjustifiable killing committed "in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon," upon the theory that in the heat of passion he intentionally knocked or threw the deceased over a stairway banister in an apartment house to the landing 28 feet below, whereby he was killed, though he did not intend killing him. The evidence was such as to justify a finding that the defendant in the heat of passion struck the deceased with his fist and knocked or pushed him against the banister, but with no intention of putting him over, or of doing more than strike him or push him against the banister, or of doing him harm at all other than such as would naturally result from striking or pushing him. It is *held* that the defendant was entitled to an instruction submitting manslaughter in the second degree defined by the statute as an unjustifiable killing "in the heat of passion, but not by a deadly weapon or by use of means either cruel or unusual."

Defendant was indicted by the grand jury of Hennepin county charged with the crime of murder in the first degree, tried in the district court for that county before Bardwell, J., and a jury, and found guilty of manslaughter in the first degree. From an order denying his motion for a new trial, defendant appealed. Reversed.

[1]Reported in 183 N. W. 143.

*A. M. Cary,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General and *Floyd B. Olson,* County Attorney, for respondent.

DIBELL, J.

The defendant was indicted for murder in the first degree for the killing of one Jack Regan on August 23, 1919. He was convicted of manslaughter in the first degree and appeals.

The defendant requested the court to submit manslaughter in the second degree. The court refused. The question is whether in refusing it erred.

1. Under the indictment the defendant could be convicted of manslaughter in the second degree if the facts warranted, and if they were of such character he was entitled, upon request, to an appropriate instruction submitting the second degree. G. S. 1913, §§ 8476, 9213; State v. Smith, 56 Minn. 78, 57 N. W. 325; State v. Gaularpp, 144 Minn. 86, 174 N. W. 445; State v. Brinkman, 145 Minn. 18, 175 N. W. 1006; State v. Morris, supra, p. 41, 182 N. W. 721. And it was early held that if the jury has a reasonable doubt whether the accused is guilty of the higher or lower degree it should convict of the lower. State v. Laliyer, 4 Minn. 277 (368).

2. The defendant Abdo, Regan who was killed, and one Rennes were ex-service men. They were crippled to some extent and were taking vocational training at the Dunwoody Institute in Minneapolis. They were all good friends. Regan and Rennes were pals. On the night of August 23, 1919, they were shooting dice in the defendant's room on the third floor of an apartment building in Minneapolis. Apparently they had been drinking. The defendant had something like $80 when they commenced gambling and lost all but about $16. It is probable that Regan got most of it. The defendant claimed that the dice were loaded. He insisted that unless his money was returned he would break the dice and ascertain the fact. A quarrel and fight quickly followed. The defendant was pitted against Regan and Rennes. In some way Regan went over the bannister to the landing 28 feet below and was killed. No one of the three was armed.

The court, in addition to murder in the first degree and in the second

degree, submitted manslaughter in the first degree defined by the statute as an unjustifiable homicide committed "in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." G. S. 1913, § 8608, subd. 2. The defendant asked that the court submit manslaughter in the second degree defined by the statute as an unjustifiable homicide committed "in the heat of passion, but not by a deadly weapon or by use of means either cruel or unusual." G. S. 1913, § 8612, subd. 2. The court refused.

The evidence was such as to justify a finding that Regan and Rennes were the aggressors and that the defendant did nothing more than reasonably repel their attacks, and in doing so pushed or threw Regan against or over the banister; or that he fell over the banister not as an immediate effect of the defendant's blow. Such a finding would relieve the defendant of criminal responsibility and a verdict of not guilty would necessarily result.

The evidence was such as to justify a finding that in the heat of passion engendered in the quarrel the defendant wrongfully and not in his own protection or in repelling an attack, intentionally and knowing the situation threw Regan over the banister to the landing. Such a finding would result in a verdict of manslaughter in the first degree. That a killing by purposely throwing one from the landing on the third floor to the landing on the first floor, a distance of 28 feet, though without an intent to kill, would be a killing in a "cruel and unusual manner," an inherent element of manslaughter in the first degree, seems clear enough. What constitutes cruel or unusual manner or means within the meaning of the statute is suggested by the supreme court of Kansas, in considering second degree manslaughter which corresponds to our first degree, as follows: "It must be said, therefore, that in order to constitute manslaughter in the second degree there must be some refinement or excess of cruelty sufficiently marked to approach barbarity, and to make it especially shocking; and the unusual character of the manner displayed must stand out sufficiently peculiar and unique to create surprise and astonishment, and to be capable of discrimination as rare and strange." State v. Knoll, 72 Kan. 237, 83 Pac. 622. And see State v. Wilson, 98 Mo. 440, 11 S. W. 985; Schlect v. State, 75 Wis. 486, 44 N. W. 509.

The jury was not required to accept either of the two explanations given of what happened. It could conclude that in the fight the defendant was in the wrong; that he knocked or pushed or threw Regan against the banister with no purpose of throwing him over it; that he had no intention of doing harm other than such as would result from a blow with the fist; that he then turned to repel the attack of Rennes; and that Regan as a result of the defendant's blow stumbled or fell or in some way went over the banister to the landing below and was killed. There is considerable in the evidence to suggest that neither the defendant nor Rennes knew that Regan had been hurt at the landing until after they were through with their fight and after Rennes had restored a few dollars of the evening's gains. If this state of facts were found the defendant might be guilty of manslaughter in the second degree, but not in the first degree, for the killing, while in the heat of passion, would not be "in a cruel and unusual manner," or by "means either cruel or unusual." It would be an unintentional but wrongful killing, with no greater criminal consequences than if death had resulted directly from a blow given in the fight. If a blow criminally given and in the heat of passion unintentionally results in death, the act which otherwise is an assault becomes manslaughter. But as between the two degrees of manslaughter culpability is measured by the means and manner which the wrongdoer chooses to use. The situation involved is peculiar and no case directly in point is cited, but Bliss v. State, 117 Wis. 596, 94 N. W. 325, involves a quite similar principle.

It was error not to submit manslaughter in the second degree.

In view of a new trial it may be suggested with propriety that the evidence fails to show by the degree of proof required either murder in the first or in the second degree.

Order reversed.