# STATE v. ERNEST LEE JORDAN.

136 N. W. (2d) 601.

July 30, 1965—No. 39,701.

*Newton S. Friedman,* for appellant.

*Robert W. Mattson,* Attorney General, *John C. Arko,* County Attorney, and *William L. Stege,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying defendant's motion for a new trial.

Defendant was charged by information with the crime of aiding and abetting a theft in violation of Minn. St. 609.05, subd. 1, and 609.52, subd. 2(1), on March 12, 1964, at the Plaza Piggly-Wiggly Store located at 1130 East First Street, Duluth, Minnesota. A plea of not guilty was entered. The defendant was represented at trial by a court-appointed attorney, who also represents him on this appeal. Trial before a jury commenced May 11, 1964, and terminated in a verdict of guilty returned on the following May 14. Defendant moved promptly for a new trial which was denied by order of the district court dated June 22, 1964. On July 21, 1964, defendant was sentenced to imprisonment for a term not to exceed 2 years and was committed to the custody of the commissioner of corrections until released according to law.

Defendant contends that he was denied a fair trial in the following respects:

(1) A lesser and included offense was not properly submitted.

(2) Trial irregularities including

(a) failure to sequester a prospective witness;

(b) verbal exchanges between court and counsel which caused prejudice;

(c) improper instructions and unfair presentation by the state; and

(d) receipt in evidence of an oral confession attributed to the person defendant allegedly aided.

■ There are five principles which apply with respect to the submission of included crimes for consideration by the jury:

(a) A person prosecuted for a crime may be convicted either of the crime charged or an included crime, but not both.[1]

(b) If a defendant is guilty as charged, or not at all, instructions with respect to lesser but included crimes are not appropriate.[2]

(c) If the evidence adduced at trial would permit a finding of guilty of an included crime, defendant is entitled to appropriate instructions advising the jury of its power to return a verdict of guilty of the lesser offense.[3]

(d) The right of the defendant to have such instructions given to the jury may be waived (d1) expressly[4] or (d2) implicitly by failure to make proper request for such submission.[5]

---

[1] Minn. St. 609.04, effective September 1, 1963, provides:

"Subdivision 1. Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A lesser degree of the same crime; or

"(2) An attempt to commit the crime charged; or

"(3) An attempt to commit a lesser degree of the same crime; or

"(4) A crime necessarily proved if the crime charged were proved.

"Subd. 2. A conviction or acquittal of a crime is a bar to further prosecution of any included crime, or other degree of the same crime."

[2] See, State v. Pankratz, 238 Minn. 517, 57 N. W. (2d) 635, and cases cited.

[3] See, State v. Brinkman, 145 Minn. 18, 175 N. W. 1006. "* * * [I]f there was a doubt as to which of the two degrees the defendant was guilty, if guilty of one, it was its [the jury's] duty to find the lesser degree." State v. Tuomi, 167 Minn. 74, 78, 208 N. W. 528, 529; State v. Smith, 56 Minn. 78, 57 N. W. 325.

[4] See, State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44; State v. Jenkins, 171 Minn. 173, 213 N. W. 923; State v. Morris, 149 Minn. 41, 182 N. W. 721.

[5] See, State v. Beaudette, 168 Minn. 444, 210 N. W. 286; State v. Gaularpp,

(e) Where the jury is provided with forms of verdicts and paragraph (c) above applies, a form of verdict should be included for use by the jury if it finds the defendant guilty of the lesser but included offense.[6]

Applying these principles:

Theft of an amount less than that specified as an essential element of the crime charged is an included offense. See, State v. Morris, 149 Minn. 41, 182 N. W. 721.

Minn. St. 609.52, subd. 2, provides in part:

"Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

"(1) Intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property * * *."

Subd. 3 of the section provides:

"Whoever commits theft may be sentenced as follows:

* * * * *

"(2) To imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the value of the property or services is more than $100 but not more than $2,500; or

* * * * *

"(4) In all other cases where the value of the property or services is $100 or less, to imprisonment for not more than 90 days or to payment of a fine of not more than $100 * * *."

Minn. St. 609.05, subd. 1, provides:

"A person is criminally liable for a crime committed by another if he

---

144 Minn. 86, 174 N. W. 445; State v. Keehn, 135 Minn. 211, 160 N. W. 666. The trial court may submit the lesser offense even though defendant prefers otherwise. State v. Pankratz, 238 Minn. 517, 57 N. W. (2d) 635.

[6] See, 23A C. J. S., Criminal Law, § 1293, and cases cited in footnotes 85 and 88. See, also, Garrett v. S. N. Nielsen Co. 49 Ill. App. (2d) 422, 200 N. E. (2d) 81; Freeby v. Town of Sibley, 183 Iowa 827, 167 N. W. 770; Ronzani v. State, 24 Wis. (2d) 512, 129 N. W. (2d) 143.

intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

The evidence establishes that on March 12, 1964, money was appropriated at the Piggly-Wiggly Store at Duluth by one Arthur Porter. The evidence is adequate to support a finding that defendant intentionally aided in the theft by diverting the attention of the lady in charge of the cash register, thus permitting Porter to obtain possession of money in some amount. The critical fact question in the case was: How much did Porter take?

Mrs. Ruth Olson, the cashier, testified that defendant caused her to turn away from the register by soliciting help in selecting some paper bags so located that she could not give the assistance requested without switching her advertence from the register and from Porter who was then standing near it. A noise at the register reverted her observation. She then noted that (a) Porter was putting money in some amount in his pockets; (b) a $20 bill had fallen on a conveyor belt located between the cash register and the place where Porter was standing; (c) the cash register compartment where the $20 bills were kept was empty. However, Mrs. Olson was not in a position to testify exactly how much money had been removed.

The reckoning as to the exact amount of cash taken was based on a register shortage calculated by Alan Mettner, manager of the store. The practice, he said, was to put $200 in the register at the start of each day's business. Thereafter, all additions and withdrawals are noted or recorded. Based on past experience, the amount in the register at any given time would equal $200 plus recorded receipts minus noted withdrawals. Sometimes shortages not attributable to theft were noted but never in an amount exceeding $10. The variance between the amount in the register when checked just after the taking by Porter and the amount which by Mettner's calculations should have been there was $112.81.

In light of Mr. Mettner's testimony that the procedure followed by him was done routinely in the usual course of the store's business, and that he had found from long experience that this method of calculating was an accurate one, we believe that the jury would have been justified in finding the amount taken to have been over $100. See, State v. Biehoffer, 269 Minn. 35, 129 N. W. (2d) 918; State v. Dale, 159 Minn. 455, 199 N. W.

99; Horsey v. State, 225 Md. 80, 169 A. (2d) 457; Hankins v. State, 115 Neb. 350, 213 N. W. 344. However, the necessary assumptions involved in this process of calculation, i. e., that the amount placed in the cash register at the start of business on March 12 was $200; that the receipts and withdrawals were accurately recorded; that no errors were made in the handling of cash by any employee; and that no unauthorized person other than Porter extracted money from the register, are not so compellingly certain as to bar jury consideration of the possibility that the amount taken by Porter might have been less than $100.

From the conclusion that the evidence adduced at the trial permitted a finding of guilty of aiding in the theft of an amount less than $100, it follows that defendant was entitled to appropriate instructions advising the jury of its power to return a verdict of guilty of the lesser offense, unless there was an express or implicit waiver of this right. We do not find in the record before us any statement made in behalf of the defendant indicating a preference that the jury be instructed that it find defendant guilty of having taken $100 or more, or, in the alternative, innocent. Defendant did request that the jury be instructed as follows:

"If you decide that Mr. Jordan did do the act, you must consider what is the amount that was taken since, if it is under $100.00, it is only a misdemeanor, but if it is over $100.00, it is then a felony. The amount taken must be proved beyond a reasonable doubt."

The prosecution urged the jury to find that the amount taken was in excess of $100. Defendant's presentation of this aspect of the case to the jury is illustrated by these comments:

"* * * We don't have to prove innocence or to prove that we didn't commit a felony but we committed a misdemeanor. It's the duty of the state to prove that. Did they prove that one hundred and twelve dollars was taken out of that till? No, they didn't; they haven't. They proved that —possibly, they may have proved that possibly eighty dollars was taken; that's all. Not a cent more * * *.

\* \* \* \* \* \*

"* * * I think it's quite clear that it has not been proven beyond a reasonable doubt that a felony, the taking of money of over one hundred

dollars, occurred on the 12th day of March, 1964, at the Plaza Piggly Wiggly, and we ask you to bring in a verdict in accordance therewith."

The trial court in submitting the question to the jury did instruct them that the state had the burden to prove every essential factor of the crime charged beyond a reasonable doubt. And with respect to the amount in controversy the trial judge advised the jury:

"* * * If you decide that Mr. Jordan did do the act, you must consider what the amount is that was taken which, if it is under one hundred dollars, is a misdemeanor, but if it is over one hundred dollars, is a felony. The owner of the store testified it was one hundred and twelve dollars, I think, and eighty-one cents. The state doesn't have to prove beyond a reasonable doubt where [every] nickel that was taken went, or account for it, but it must prove beyond a reasonable doubt that over one hundred dollars was taken by Porter and that it was taken with the help and aid of the defendant Jordan."

At the conclusion of the instructions, the jury was submitted only two forms of verdict. One was to be used if the jurors found the defendant not guilty. The other contained the statement:

"We the jury in the above-entitled action find the defendant guilty of the crime of aiding in the theft as charged in the information filed against him."

After the jury retired to the jury room, defendant's attorney made certain objections with respect to the court's charge including this comment:

"I further object to the forms of the verdict and to the fact that the judge did not cover the question of a misdemeanor."

The jury found the defendant guilty, using the form provided for that purpose. Since the information filed in this case charged that defendant had "feloniously" aided Arthur Porter in the theft, the necessary implication of the verdict as returned was that the jury had found the amount taken to have been as claimed by the state. See, Bilansky v. State, 3 Minn. 313 (427).

Defendant moved for a new trial forthwith and by his motion complained that only two forms of verdict had been given to the jury, "giving

the jury only the choice of finding a felony or letting him go." The trial court, in denying this motion, noted:

"The suggestion that the Court erred in giving only two verdicts to the jury, that is, one permitting the jury to find the defendant guilty as charged, and the other one of not guilty is erroneous because there was no request on the part of the defendant to permit the jury to find the defendant guilty of a lesser charge or of a misdemeanor."

In its memorandum the trial court indicated that in its judgment defense counsel purposely refrained from making the request in the hope that if the jury had a choice of bringing in a verdict finding defendant guilty of a felony or a verdict finding him not guilty, it might prefer the latter course.

We do not find in our decisions a situation precisely like that here presented. The case is unlike State v. Gavle, 234 Minn. 186, 48 N. W. (2d) 44, where the counsel for defense stated expressly that instructions with respect to a lesser, but included, offense were not wanted. It differs from decisions such as State v. Beaudette, 168 Minn. 444, 210 N. W. 286, where the absence of a requested instruction concerning the submission of a lesser offense was clear. In this case the instruction asked by the defendant, and in substance given by the trial court, is inconsistent with the theory of waiver. We do not feel that the defendant can properly complain of the quoted instruction; it was what he invited. The difficulty comes from the fact that the jury was not given a form of verdict to be used in the event they found defendant guilty of having aided in the theft of an amount less than $100. Defendant's exception to the procedure—although somewhat obscured by inclusion with a number of other less meritorious complaints —was adequate we believe to protect his record on this point. Exception was made after the jury had retired but before the verdict was returned and was reiterated promptly after the return of the verdict in a motion for a new trial.

Perhaps defendant's counsel did envision the possibility that the jury, uncertain as to the amount taken, would find defendant innocent. But, whatever the tactical considerations may have been, the fact remains that defendant was entitled to have the lesser offense submitted to the jury in the absence of a clear waiver, express or implied. The record, in our

opinion, is not sufficient to support a finding of such a waiver. This being so, under the authorities cited, the defendant becomes entitled to a new trial.

■ The remaining claims of error will probably not arise again. For this reason our discussion of them will be limited. See, State v. Shetsky, 229 Minn. 566, 40 N. W. (2d) 337; Minn. Dig., Appeal and Error, Key No. 843; 1 Dunnell, Dig. (3 ed.) § 395h.

■ Arthur Porter, the man whom Jordan was charged with having aided in thievery, was present in the courtroom throughout the trial over the objection of defendant who had moved that witnesses be sequestered. Whether prospective witnesses should be barred from the courtroom when not giving testimony is generally a matter to be determined by the trial judge, acting within the range of discretion defined in such recent cases as State v. Garden, 267 Minn. 97, 125 N. W. (2d) 591, and in State v. Elli, 267 Minn. 185, 125 N. W. (2d) 738. In this case, Porter's testimony could not have been affected by his being in the courtroom because he was not called to the witness stand by either the prosecution or the defense. In addition, his presence in the courtroom during a considerable part of the trial was necessary in order to enable witnesses to identify him as one of the persons involved in the taking.

■ Although the verbal exchanges between court and counsel arose out of circumstances not likely to recur, we note that the limitations detailed in Hansen v. St. Paul City Ry. Co. 231 Minn. 354, 43 N. W. (2d) 260, are especially apposite in a criminal case.

■ Except as noted, we do not find prejudicial error in the instructions or in the trial methods adopted by the state. If, upon retrial, defendant prefers that no mention be made of those incidental features of the charge which have been assigned as error here, it will be the duty of defense counsel to call such matters to the attention of the trial judge for his consideration so that claims of error or dissatisfaction can be avoided so far as possible.

■ Although present in the courtroom throughout the trial, Arthur Porter was not called as a witness either by the state or by the defendant. Oral confessions made by him after the alleged crime was accomplished[7]

---

[7] Note that the rule with respect to the admissibility of statements made by

were given in testimony by a police officer who had heard the statements made by Porter. Presumably, this hearsay testimony was received on the theory that in a prosecution for aiding another in the commission of a crime evidence may be introduced against the abettor which would be admissible in the trial of the principal, including confessions and admissions. See, 22A C. J. S., Criminal Law, § 781.

On April 5, 1965, two decisions were filed by the United States Supreme Court which restrict this procedure upon Federal constitutional grounds. In Pointer v. Texas, 380 U. S. 400, 85 S. Ct. 1065, 13 L. ed. (2d) 923, it was held that a defendant in state criminal proceedings was deprived of due process of law when convicted of robbery after a trial in which the transcript of the testimony of the victim, which included identification of the defendant as perpetrator of the offense, given at a preliminary examination was received in evidence. At the time of the trial the victim was not available as a witness. The defendant was not represented by counsel at the time of the preliminary examination and had been given no adequate opportunity to cross-examine the victim on that occasion. In Douglas v. Alabama, 380 U. S. 415, 85 S. Ct. 1074, 13 L. ed. (2d) 934, a different aspect of the same problem was presented. There, the United States Supreme Court held that a defendant convicted in state criminal proceedings was denied due process of law because one who allegedly participated with him in the crime was placed on the witness stand and interrogated with respect to a confession which he had made, the witness' response to the interrogation being the assertion of his constitutional privilege against self-incrimination. Because the effect of this procedure was to give to the jury the witness' confession without according defendant the right to cross-examine the witness against him, the resulting conviction was set aside.

It is difficult to distinguish the principle of these cases and particularly that of Douglas v. Alabama, *supra,* from that which will be involved here if, upon retrial, the oral confessions of Porter are received in evidence over objection by the defendant and Porter himself does not testify. Because the relevance of these decisions of the United States Supreme Court to the

---

conspirators in furtherance of the execution of a common purpose before accomplishment of its objective is not involved. See, State v. Guy, 259 Minn. 67, 105 N. W. (2d) 892; State v. Connelly, 249 Minn. 429, 82 N. W. (2d) 489.

particular problem of this case has not been briefed or argued, we deem it sufficient to call the pronouncements to the attention of court and counsel.

Judgment reversed and new trial ordered.