STATE v. HARRY ALEXANDER LEINWEBER.

228 N. W. 2d 120.

April 4, 1975—No. 43906.

*C. Paul Jones,* State Public Defender, and *David G. Roston,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Keith M. Brownell,* County Attorney, and *Michael R. Dean,* Assistant County Attorney, for respondent.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Defendant, Harry Alexander Leinweber, was charged by information with murder in the second degree for the shooting death in June 1971 of his wife. Following an 18-day trial, the jury found him guilty of the lesser offense of murder in the third degree, and he was sentenced to imprisonment for an indeterminate term of not more than 25 years. Upon his appeal from an order denying his motion for a new trial and from the judgment of conviction, he alleges as prejudicial errors the denial by the trial court of his request to instruct the jury on the lesser offense of first-degree manslaughter and improper prosecutorial cross-examination. We hold that the refusal of the trial court to submit first-degree manslaughter prejudiced defendant's right to a fair trial, reverse defendant's conviction, and order a new trial.

Defendant, 60 years old at the time of trial in 1972, had been employed since 1946 as a "boilermaker welder," a job which necessitated very frequent travel. His first wife, after 27 years of marriage, died in 1959, leaving two children. In 1965, defendant's union sent him to Virginia, Minnesota, to work at the taconite plant, where he met Louise Bronich Rozinka and married her in 1966. She was then 27 years old. After their marriage, defendant, Louise, and her three children by a prior marriage— Dee Anne (age 15 at the time of trial), Kelly (age 12), and William (age 11)—lived together although defendant continued to

travel, living in 11 states in 5 years as he moved to various jobs. At times the family accompanied him and at times they remained in Virginia, where they finally settled in 1969.

The testimony as to the relationship between defendant and his wife and whether their marriage was relatively peaceful or increasingly tumultuous was lengthy and conflicting. While there was no eyewitness to the shooting death, which occurred in the kitchen of the family home shortly before 1 a. m. on June 26, 1971, defendant in his testimony admitted firing the fatal shot from his wife's .22-caliber semi-automatic rifle but claimed he was in the act of dislodging jammed shells and was unaware of her presence. The jury was thus left with the task of reconstructing the events surrounding the shooting and evaluating the state of mind of defendant to resolve the state's claim that the shooting and death were intentional against defendant's insistence that they were an accident, and to determine whether they constituted any degree of homicide. See, State v. Slack, 295 Minn. 518, 202 N. W. 2d 876 (1972).

The trial court instructed the jury as to murder in the second degree, murder in the third degree, and manslaughter in the second degree.[1] Defendant's requested instruction for manslaughter in the first degree, objected to by the state, was refused by the trial court for the stated reason that under the statutory definition (Minn. St. 609.20[1])[2] "not only does the defendant completely repudiate such a concept, but there is no testimony in this case of what words were spoken, or what acts were per-

---

[1] Second-degree murder is intentional but unpremeditated murder, Minn. St. 609.19; third-degree murder is nonintentional killing by an eminently dangerous act evincing a depraved mind, § 609.195; and manslaughter in the second degree is nonintentional killing by culpable negligence which creates an unreasonable risk of causing death or great bodily harm to another, § 609.205(1).

[2] First-degree manslaughter is, so far as pertinent, intentional killing in the heat of passion "provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances." § 609.20(1).

formed by any one." The circumstantial evidence viewed most favorably to the prosecution required submitting the offense charged—murder in the second degree. Testimony by decedent's uncle of defendant's threat 6 weeks before the shooting to "kill" his wife and by her son of deceased's dying outcries, coupled with the evidence of an increasingly discordant marital relationship, would have permitted the jury to infer an intent to cause death. Similarly, submission of the lesser degree of murder in the third degree, a killing by acts "evincing a depraved mind," was arguably justified where the trial court, as the record discloses, relied upon our statement in State v. Mytych, 292 Minn. 248, 259, 194 N. W. 2d 276, 283 (1972), a decision issued during the trial, that "[a] mind which has become inflamed by emotions, disappointments, and hurt to such degree that it ceases to care for human life and safety is a depraved mind." [3] Clearly, the lesser degree of manslaughter in the second degree was properly submitted, as the jury might reasonably have inferred from defendant's own factual account of the shooting that, although he claimed it was a "total accident," his actions in causing the rifle to discharge were culpably negligent and created an unreasonable risk of causing great bodily harm or death to another.

However, our reading of the record compels the conclusion that an instruction pursuant to defense counsel's request on first-degree manslaughter should also have been submitted. The court's refusal to do so failed to properly recognize, in this unwitnessed shooting, the jury's task of reconstructing what actually occurred prior to and at the time of the shooting. In doing so, the jury was at liberty to credit or reject not only any part of defendant's testimony but also any other testimony, including that presented by the state. Thus, the mere fact that defendant's

---

[3] We caution that this case is not a typical application of this offense. See, State v. Kopetka, 265 Minn. 371, 121 N. W. 2d 783 (1963); State v. Fredlund, 200 Minn. 44, 273 N. W. 353 (1937); State v. Nelson, 148 Minn. 285, 181 N. W. 850 (1921); State v. Lowe, 66 Minn. 296, 68 N. W. 1094 (1896).

testimony repudiated a heat-of-passion shooting did not preclude the jury from finding the facts supporting a conclusion that the shooting death was neither deliberate nor accidental but some lesser degree of homicide. It is probable that the jury may have concluded that the lesser degrees submitted did not fit its reconstruction of the facts of the tragedy because the jury, after requesting a "written" explanation of the difference in the degrees of homicide and being orally reinstructed in response, spent some 19 or 20 hours deliberating. The jury might reasonably have inferred from the testimony and circumstantial evidence that this was a marriage under increasing emotional strain, resulting in anger and frustration on the part of both deceased and defendant as reflected in their habitual arguing when living together and in their correspondence when defendant was away from home. On the day preceding the shooting, the signs of stress in the marriage were particularly apparent. Defendant had frequented a number of local bars during the day and evening, and heated arguments between defendant and decedent had occurred. One witness testified that about 10 a. m. June 25 the deceased had entered a bar where defendant had taken deceased's 11-year-old son, William, and had profanely berated defendant in a voice so loud it could be heard in the street. Following this incident, decedent went with William to the office of a lawyer. Defendant knew of this visit and questioned William about it, and the jury, from earlier testimony that decedent had been contemplating divorce proceedings, could have inferred that defendant knew of the purpose of her visit. There was also considerable testimony that decedent had a loud and vulgar tongue and frequently castigated defendant in vile terms. Additionally, William testified that he was awakened just prior to his mother's death. Reporting the shooting to the police, he related that his parents were arguing so that he couldn't sleep, that there was a gunshot, and that he saw his mother lying on the floor. He testified that she cursed and swore at defendant for 2 minutes before she expired. From this and other testimony, the jury might reasonably

have inferred that defendant, frustrated and desperate about the apparently imminent breakup of his marriage, intentionally shot his wife in the heat of passion aroused by bitter domestic argument. Where such inferences are supported by the evidence, it was prejudicial error to deny the requested instruction on first-degree manslaughter and a new trial must be ordered. State v. Abdo, 149 Minn. 195, 183 N. W. 143 (1921); State v. Jordan, 272 Minn. 84, 136 N. W. 2d 601 (1965).

The difficult problem confronting a trial court of when instructions on lesser degrees of homicide should be given in a case such as this is often not easy to resolve.[4] It can be argued from a theoretical standpoint that the prosecutor should have the right to prevent the submission of lesser degrees of the offense charged, since he initially determines whether and what charge to present to a grand jury or to file. Furthermore defendant, if acquitted of the charged offense, cannot complain, for he may have escaped possible conviction of a lesser offense.[5] Conversely, where a defendant is confronted with a specific single charge, and defense counsel after full investigation advises defendant of the probability of acquittal and accordingly prepares to meet that charge, he ought, consistent with the adversary nature of the proceedings, to be able to prevent submission of lesser degrees. Compounding defendant's inability to do so is the situation where, as here, other lesser degrees with prosecutorial consent are given, but one which defense counsel feels professionally obligated to urge as justified by the evidence is omitted. In such a situation, defendant faces the risk that the jury might convict

[4] Moreover, the observation that "[t]here is much confusion in Minnesota law as to just what the effect is of submitting lesser included offenses to the jury over defendant's objection, and what the trial court's duties are in connection with submitting lesser included offenses" is not unjustified. See, Minnesota Continuing Legal Education, Minn. Practice Manual 23, 1 Graven, Minnesota and Federal Criminal Law and Procedure: II, § 9.5, A.1.

[5] See, Minn. St. 628.14, which authorizes the prosecutor to charge by "counts for the different degrees of the same offense * * *."

him of a greater offense than justified rather than acquit of the offenses submitted, simply because they believe him guilty of some wrongdoing. Such analyses, however, not only ignore statutes which are designed to protect defendant and which speak to the authority of the trial judge and jury but also fail to appreciate the proper roles and functions of the prosecutor, defense counsel, and the trial judge.

Section 611.02, ensuring to defendant the presumption of innocence, also declares for defendant's protection that "when an offense has been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest." In charging the jury, the court is mandated by § 631.08 to state all necessary "matters of law." Upon a charge of "murder," under § 631.14, if the jury finds "defendant not guilty thereof, it may, upon the same indictment, find the defendant guilty of manslaughter in any degree." An ancient maxim declares that "[t]he duty of the prosecutor is to seek justice, not merely to convict."[6] Defense counsel, as the professional advocate and intermediary of the accused, is charged with the control of and responsibility for the conduct of the defense during trial. In discharging this responsibility, he must ensure protection not only for defendant's legitimate immediate interests but, considerations of personal or professional advantages aside, for defendant's long-range interests as well.[7] The trial judge, after giving counsel an opportunity at the close of the evidence or earlier to tender proposed instructions and after conference before final argument where trial counsel are afforded full opportunity to object to any proposed instruction and to be advised what instructions will be given, has the

---

[6] A. B. A. Standards for Criminal Justice, The Prosecution Function (Approved Draft, 1971) § 1.1(c); A. B. A. Code of Professional Responsibility, EC 7-13 (adopted August 4, 1970, 286 Minn. ix).

[7] A. B. A. Standards for Criminal Justice, The Defense Function (Approved Draft, 1971) §§ 5.2 and 1.6 and *Commentary*.

ultimate responsibility to ensure that all essential instructions are given.[8]

Section 609.04 provides that upon prosecution the accused "may be convicted of either the crime charged or an included offense, but not both." Every lesser degree of murder is intended by the statute to be characterized as an "included offense." In State v. Jordan, 272 Minn. 84, 86, 136 N. W. 2d 601, 604 (1965), principles which should govern the submission of a lesser included offense were summarized:

"(a)  A person prosecuted for a crime may be convicted either of the crime charged or an included crime, but not both.

"(b)  If a defendant is guilty as charged, or not at all, instructions with respect to lesser but included crimes are not appropriate.

"(c)  If the evidence adduced at trial would permit a finding of guilty of an included crime, defendant is entitled to appropriate instructions advising the jury of its power to return a verdict of guilty of the lesser offense.

"(d)  The right of the defendant to have such instructions given to the jury may be waived (d1) expressly or (d2) implicitly by failure to make proper request for such submission.

"(e)  Where the jury is provided with forms of verdicts and paragraph (c) above applies, a form of verdict should be included for use by the jury if it finds the defendant guilty of the lesser but included offense."

To this we add that in a murder case it is preeminently the trial court's duty in the exercise of its discretion to determine what lesser degrees of homicide to submit. This duty is founded upon the general principles previously stated. Neither the prosecution nor the defense can limit the submission of such lesser degrees as the trial court determines should be submitted. State v.

---

[8] A. B. A. Standards for Criminal Justice, Trial by Jury (Approved Draft, 1968) § 4.6. See, also, Rule 26.03, subd. 18, Rules of Criminal Procedure, effective July 1, 1975, and commentary.

Pankratz, 238 Minn. 517, 57 N. W. 2d 635 (1953); Beltowski v. State, 289 Minn. 215, 183 N. W. 2d 563 (1971). In determining what, if any, lesser degrees should be submitted, the test should be whether the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified. Where such is the state of the evidence, it is the duty of the trial court to submit such lesser degrees as it determines the evidence warrants in order that the jury may properly carry out its deliberations contemplated by §§ 611.02 and 631.14. If follows that in such cases, unless waived by defendant, it is error not to submit lesser degrees except in those extraordinary cases where the failure to do so is otherwise supported by a proper exercise of the trial court's discretion and no prejudice to defendant results.

The necessity for a new trial in this case receives additional force from the fact that the prosecution improperly cross-examined defendant, both by asking accusatory questions as to prior misconduct without offering proof to support the accusations and by inquiring into the details of a prior conviction under the guise of impeachment. In questioning defendant about the reason for his vacating an apartment where he had formerly lived, the prosecution implied that defendant had been evicted for fighting with his wife. Despite insistent denials by defendant, the prosecution continued to ask the accusatory questions without ever offering testimony to show that an eviction for fighting had occurred. Such questioning was prejudicial and may have planted in the jurors' minds the innuendo that defendant was a man who had previously assaulted his wife, an inference which lacks support in the evidence. This court has repeatedly condemned the asking of questions by the prosecution which, by the way they are framed and phrased, accuse the defendant of misconduct not supported in the evidence. State v. Silvers, 230 Minn. 12, 40 N. W. 2d 630 (1950); State v. Rediker, 214 Minn. 470, 8 N. W. 2d 527 (1943); State v. Nelson, 148 Minn. 285, 181

N. W. 850 (1921) ; State v. Flowers, 262 Minn. 164, 114 N. W. 2d 78 (1962).

In addition, the prosecution on cross-examination delved deeply into the details of a prior simple assault conviction. The prosecution asserts that a detailed inquiry into the conviction was necessary because defendant had earlier minimized the nature of the prior offense by describing it as "using foul language in front of a lady" when the complaint refers to "[c]ruel and inhuman treatment, beating up, hitting me." While the prosecution's argument has some merit since a defendant is not to be encouraged to describe a prior offense so as to deceive the jury, we nevertheless believe that the details of the prior conviction were injected into the trial with prejudicial effect. The facts of the shooting and resulting death were admitted. Little proper purpose is discernible for a thorough rehearsal of all the facts of a prior offense when the danger of prejudice in such a rehearsal is so great. State v. Norgaard, 272 Minn. 48, 136 N. W. 2d 628 (1965) ; State v. West, 285 Minn. 188, 173 N. W. 2d 468 (1969) ; State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965).

Reversed and new trial granted.