**STATE of Minnesota, Respondent,**

v.

**Alvin Foster LARSEN, Appellant.**

**No. C7-87-214.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Review Denied Dec. 2, 1987.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Spec. Asst. Atty. Gen., St. Paul, Paul G. Morreim, Freeborn Co. Atty., Albert Lea, for respondent.

Samuel A. McCloud, Dean S. Grau, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Alvin Foster Larsen was convicted of second degree felony murder. On appeal, Larsen argues that the trial court erred in refusing to instruct the jury on misdemeanor manslaughter in the first degree. We affirm.

## FACTS

On October 26, 1985, after an afternoon and evening of drinking, appellant attended a dance at the Albert Lea VFW with his former wife, Bonnie Larsen. Appellant became too drunk to drive, and Bonnie drove appellant and herself to her house. Appellant was living at Bonnie's house.

Bonnie asked appellant to get two cans of beer from the refrigerator because she wanted to talk to him. She explained that she wanted a change in their relationship. She went on to say that she had a steady boyfriend and was sleeping with other men. Bonnie told appellant she wanted him out, telling him she would have another man in her bed "within 20 minutes." At that point, appellant, in his own words, "just grabbed her around the throat." Bonnie died as a result of appellant's manual strangulation of her.

At 1:30 a.m. on October 27, 1985, appellant called the Freeborn County Law Enforcement Center and asked the dispatcher to send a police car to Bonnie's house. (October 27 was the day clocks were turned back one hour; the call was recorded at 1:30 after the clocks at the Law Enforcement Center were turned back, so it was actually 2:30 a.m.) Appellant was able to give accurate directions to the house, and asked that the police cars not use their lights to avoid disturbing Bonnie's mother, who lived across the street.

An autopsy revealed that Bonnie's thyroid cartilage was fractured. To fracture the thyroid cartilage of a woman Bonnie's age, 39, "fairly severe pressure" is required, according to the testimony of Dr. Garry Peterson, the Hennepin County Medical Examiner. Appellant, a carpenter, has very strong arms and, at the time of the killing, weighed about 200 pounds, compared to Bonnie's weight of around 100 pounds.

Dr. Peterson testified that death by manual strangulation usually takes about one minute. In "very, very uncommon" and "exceptional" instances, death can occur in as little as ten to twenty seconds.

At trial, the judge instructed the jury on four offenses—intentional second degree murder, second degree felony murder, first degree heat of passion manslaughter, and second degree culpable negligence manslaughter. The court refused to give the jury appellant's requested instruction on first degree misdemeanor manslaughter with an underlying misdemeanor of fifth degree assault. The jury found appellant guilty of second degree felony murder. This appeal followed.

## ISSUE

Did the trial court err by refusing to instruct the jury on first degree misdemeanor manslaughter?

## ANALYSIS

The decision whether to submit lesser included offenses, if any, lies within the sound discretion of the trial court. *State v. Murphy*, 380 N.W.2d 766, 772 (Minn.1986) (citing *LaMere v. State*, 278 N.W.2d 552, 558 (Minn.1979)). A court's discretion is not unbridled. When deciding whether to give an instruction on a lesser included offense, the trial court is guided by a two part rule, articulated by the Minnesota Supreme Court:

The test applied when a defendant requests submission of a lesser offense is a two-part test: whether the lesser offense is necessarily included under Minn. Stat. § 609.04 (1982) and whether the evidence adduced is sufficient to permit the jury rationally to acquit the defendant of the charged offense and convict him of the [lesser] included offense.

*State v. Patch,* 329 N.W.2d 833, 836 (Minn. 1983) (citing *State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975)).

■ Misdemeanor manslaughter is a lesser included offense of second degree murder. *See State v. Edwards,* 343 N.W.2d 269 (Minn.1984). The first part of the test is thus satisfied.

The more difficult question is whether the evidence would permit a jury rationally to acquit the appellant of second degree murder and convict him of first degree manslaughter.

A review of the applicable statutory law is helpful in framing the issue. Second degree felony murder is defined as:

Caus[ing] the death of a human being without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence.

Minn.Stat. § 609.19(2) (1986). First degree misdemeanor manslaughter is defined as:

Caus[ing] the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force or violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby * * *.

Minn.Stat. § 609.20(2) (1986). The distinction between the two offenses lies in the severity of the underlying crimes. In this case, the distinction is in the severity of the underlying assault.

"Assault" is defined by statute to include "[t]he intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2) (1986). Third degree assault, the underlying felony of the felony murder charge, occurs when a person "assaults another and inflicts substantial bodily harm * * *." Minn.Stat. § 609.223 (1986). Fifth degree assault, on the other hand, is a misdemeanor that occurs when a person "intentionally inflicts or attempts to inflict bodily harm upon another." Minn.Stat. § 609.224, subd. 1(2) (1986). Thus, while third degree assault involves substantial bodily harm, misdemeanor assault involves mere bodily harm, a lesser threshold.

Both "substantial bodily harm" and "bodily harm" are terms defined by statute. Bodily harm means "physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7 (1986). Substantial bodily harm is defined as:

bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member.

*Id.,* subd. 7a.

■ Instructions on first degree manslaughter should be given where the underlying offense is a misdemeanor. *State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980). To determine whether the underlying offense is a misdemeanor or a felony, the court considers the facts of the particular case and the circumstances surrounding the commission of the crime. *State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980).

The state argues that the injuries suffered by Bonnie Larsen must constitute substantial bodily harm. This argument is based on the fracture of her thyroid cartilage, the permanent impairment of the functions of the heart and lungs, and the bruises and abrasions suffered.

The state also argues that, in practice, misdemeanor manslaughter can never be based on an underlying misdemeanor assault. This is so, the state argues, because whenever there is a death there is substantial bodily harm by definition.

Appellant argues that whether an assault is a misdemeanor or a felony cannot be decided based solely on the result where

the result is death, since this would eliminate the possibility of a misdemeanor manslaughter charge based on a misdemeanor assault. Rather, appellant would base the distinction on the assailant's intent. Since he intended only a fifth degree assault, appellant argues, he was entitled to a first degree manslaughter instruction.

We reject both arguments.

■ As to the state's argument, it is possible to have a misdemeanor assault that would justify a misdemeanor manslaughter instruction. For example, a simple pushing that results in the victim stumbling, striking his head on the point of a table, and dying could justify the statutory instruction. The fact that death results cannot preclude the possibility of a first degree manslaughter charge. The state's argument would, in effect, invalidate that part of the first degree manslaughter statute involving a death and a misdemeanor created with force or violence. That statute was passed by the legislature, and we decline to invalidate a law when neither its passage nor its constitutionality is in issue.

■ On the other hand, the aggressor's intent cannot be determinative. It is easy for a defendant simply to say that only a misdemeanor assault was intended. The trial court has the right to look at the evidence and decide whether the evidence provides a reasonable basis to justify such an argument. The trial court's decision on this matter will not be upset absent an abuse of discretion.

■ The facts of this assault indicate that appellant, a strong man, grabbed the victim, a woman half his weight, by the throat, a vulnerable area of the body, and choked her hard. There was evidence that a struggle took place: the body was "quite disheveled;" there was human blood under Bonnie Larsen's fingernails; the body was on the floor, not on the couch where she had been sitting, and there were abrasions caused by scraping. There was testimony that strangulation of this sort takes approximately one minute to cause death. In an "occasional case," death can occur in 10 to 20 seconds. In addition, there was testimony that it takes "fairly severe pressure" to fracture the thyroid cartilage. Finally, the evidence showed that the thyroid cartilage was fractured while Bonnie Larsen was still alive and that after the cartilage was fractured, blood continued to pump into the area. These facts support the submission of the second degree murder charge, here, third degree assault involving substantial bodily harm plus a death.

Evidence tending to show that this could have been a misdemeanor assault was also presented. There was evidence that Bonnie's drinking the night of the killing would have had an adverse effect on her reaction to pressure on her throat; that appellant's drinking would have lessened his control over what he was doing as well as his ability to judge where he grabbed Bonnie; and that appellant's drinking could have made it impossible for him to remember what he did that night.

Taking the record as a whole, and given the discretion of a trial court in deciding which lesser included instructions fit the evidence and should go to a jury, we cannot say that the trial court erred in failing to give the requested instruction on misdemeanor manslaughter in the first degree.

## DECISION
The trial court did not abuse its discretion by refusing to give appellant's requested instruction.

Affirmed.