### STATE of Minnesota, Respondent,

v.

### Billy Dawson SLAUGHTER, Appellant.

### No. A03–601.

Supreme Court of Minnesota.

Jan. 27, 2005.

John Stuart, State Public Defender, Sara Lynne Martin, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, David Craig Brown, Hennepin County Attorney Office, Minneapolis, MN, for Respondent.

## OPINION

HANSON, Justice.

Appellant Billy Dawson Slaughter was charged with two counts of aggravated robbery under Minn.Stat. § 609.245, subd. 1 (2004) and one count of simple robbery under Minn.Stat. § 609.24 (2004). After Slaughter waived his right to a jury trial, the district court acquitted him of the charged robbery offenses, but convicted him of the uncharged lesser-included offense of felony theft under Minn.Stat. § 609.52, subd. 2(1) (2004).[1] The court of appeals affirmed the conviction. *State v. Slaughter*, No. A03–601, 2004 WL 615042 (Minn.App. March 30, 2004). We granted further review to consider Slaughter's arguments that (1) the district court improperly denied his motion for judgment of acquittal, (2) the court improperly raised and considered the lesser-included offense of theft, and (3) there was insufficient evidence to sustain his conviction of theft. We affirm.

At 12:51 a.m. on September 8, 2002, Minneapolis Police Officers Jarrod Roering and Nicholas Antila were dispatched to 610 Penn Avenue North. When the officers arrived, Stacy Love was standing at the base of the steps leading to the porch, approximately 6 to 8 feet from Slaughter. Love told the officers that Slaughter had just snatched several gold chains from her neck, and that he had a knife.

Before the officers searched Slaughter, he told them that he had a knife in his pocket. Antila searched Slaughter and found a folded silver-bladed knife with a multi-colored handle. Antila's report stated that the knife was wrapped in a plastic bag, but Antila could not recall exactly how the bag was wrapped around the knife. The officers did not find any jewelry on Slaughter's person or within his reach.

While speaking with Love, Roering noticed some scratches on her neck. Love said the scratches felt "like skin burn." Roering searched the area and found a small piece of a gold necklace in the grass along a sidewalk near 610 Penn. He also found a piece of a necklace dangling off a fence and another piece in the grass near 620 Penn.

Slaughter was charged with two counts of aggravated robbery and one count of simple robbery. He waived his right to a jury trial and the case proceeded to trial before the court.

Love testified for the state. She stated that on the night of September 7, 2002, she

---

1. If property is "taken from the person of another[,]" the offense of theft is made a felony under Minn.Stat. § 609.52, subd. 3(3)(d)(i) (2004).

was gambling at a friend's house until the friend's son told her that Slaughter wanted to see her. When she went outside to talk to Slaughter, he asked her for "[his] 10 dollars" but she did not know what he was talking about. Nonetheless, she walked with Slaughter to a neighbor's house to find the person who was supposed to have given her Slaughter's $10.

She stated that after she knocked on the door, and her boyfriend Leroy Jackson came to open it, Slaughter snatched her necklaces from behind and took off running. Love and Jackson chased Slaughter to 610 Penn, where Slaughter ran up on the porch and banged on the door to the house. Love testified that she saw Slaughter holding an object with a "sharp twinkling like a blade or something" in front of him. She thought the object was "a knife or blade or something." She decided not to approach him and instead called the police on her cell phone and blocked Slaughter from leaving.

Jackson also testified for the state. Jackson admitted to smoking crack and having an altercation with Love earlier that day. He said that he was gambling in the basement of 620 Penn that evening when Love came over. When he went upstairs and opened the door, Love said "he snatched my chains," and pointed at Slaughter. Jackson thought she looked stunned and shocked. He confirmed Love's testimony that the two of them chased Slaughter to the porch at 610 Penn. Jackson testified that Slaughter pulled "something shiny" out of his pocket and held it in his hand, and Jackson told Love to call the police.

Alvin Harris, a resident of 610 Penn, also testified for the state. He stated that he opened the door upon hearing the door-bell, and saw Slaughter standing on his porch and a man and woman standing in his yard. Slaughter told Harris to call the police. Harris testified that the woman in the yard said "he snatched my chains," and Slaughter said that she took off with his $10. Harris went back in the house and his wife called the police. Harris returned to the front door after about 5 minutes. Harris testified that he did not see a knife in Slaughter's hands, and he did not find any necklaces on his porch. The next morning, he found a necklace on the walkway near his porch.

Slaughter moved for acquittal on all three charges at the close of the state's case, arguing that the state's witnesses were not sufficiently credible and that the state had not presented sufficient evidence to prove that Slaughter committed the offenses of simple robbery or aggravated robbery.[2] The district court denied Slaughter's motion, stating:

> I'm going to deny the motion at this time. Denying that, I'm not making any comment on the overall weight and credibility of the evidence which I'm left to judge at the end of the case. But at this time I'm going to deny it.

When court resumed the next morning, the judge told the parties: "from what I have seen from the prosecution's case, I[am] inclined to offer a—include a lesser-included offense of theft from person." The defense objected. The judge responded that he had the right to take into account a lesser-included offense over the defense objection, and that he would reserve final ruling on the lesser-included offense until the close of all testimony.

Slaughter then testified. He stated that on the day of the incident, he was going to

---

2. Simple robbery requires evidence of the use or threat of imminent use of force, and first-degree aggravated robbery requires evidence that the defendant was armed with a dangerous weapon or inflicted bodily harm. Minn. Stat. §§ 609.24, 609.245, subd. 1 (2004).

his friend's duplex at 620 Penn when he met Love, who asked him for change for a 10–dollar bill. He said that when he gave her two 5s, she took off running. Slaughter chased her, and she ran into a house three doors down. He waited about 20 minutes for Love to come back outside, and then asked her for the $10. She said that she did not have the money, and that she was going to call the police and tell them that he had robbed her.

Slaughter said that he then went to 610 Penn to call the police. He knocked on the door, and Harris answered. Slaughter told Harris that Love had taken $10 from him, and asked Harris to call the police. Slaughter testified that Jackson, swinging a weighted sock, approached him from the sidewalk. Slaughter said "well, I got a knife in my front pocket and if you assault me or attack me, I'm going to use it," and then Jackson retreated.

Slaughter also offered the statement of an investigator who had interviewed Greg Lavell Thomas, who was unavailable as a witness during the trial. According to the investigator's statement, Thomas had known Love for 12 years and was acquainted with Slaughter. Thomas was at 620 Penn on the day of the incident and witnessed a heated argument between Love and Jackson, during which Love accused Jackson of taking money from her. Thomas also saw Slaughter ask Love for the $10 that she owed him. Love yelled at Slaughter, at which point Thomas went back into the house. Thomas' statement concluded that he "seriously doubts" that Slaughter would try to rob Love, that Love is argumentative and has been "know[n] to make up stories in the past[,]" and "probably made up the robbery story to get [Slaughter] in trouble."

The court acquitted Slaughter of the two counts of aggravated robbery and one count of simple robbery, having found that the state had not proven beyond a reasonable doubt that Slaughter was armed with a dangerous weapon at the time of the robbery or that force or the threat of imminent force was used during the robbery. The court considered the uncharged theft offense "more problematic." The court found no witness was particularly credible, but stated: "in areas where there was hard evidence that supported testimony, I am finding it to be credible to an exten[t]." The court considered the recovery of the broken necklaces and scratches on Love's neck as "absolutely consistent with the testimony that the necklaces were snatched off her neck rather than voluntarily being taken off by her." Because there was no testimony regarding value, the court valued the necklaces at less than $500. The court found beyond a reasonable doubt that Slaughter "took jewelry from the neck of Stacy Love[,]" and found Slaughter guilty of felony theft.

The court of appeals affirmed Slaughter's conviction and sentence. We granted review of the conviction but declined review of the sentence.

## I.

We first consider the issue of whether the district court erred by denying Slaughter's motion for judgment of acquittal at the close of the state's case-in-chief. Minnesota Rule of Criminal Procedure 26.03, subdivision 17(1), provides that a court "shall order the entry of a judgment of acquittal of one or more offenses charged in the tab charge, indictment, or complaint if the evidence is insufficient to sustain a conviction of such offense or offenses."

■ A motion for acquittal is procedurally equivalent to a motion for a directed verdict. The test for granting a motion for a directed verdict is whether the evi-

dence is sufficient to present a fact question for the jury's determination, after viewing the evidence and all resulting inferences in favor of the state. *Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). The Eighth Circuit has adopted a similar approach for motions to acquit. *United States v. Richards,* 967 F.2d 1189, 1196 (8th Cir.1992) ("[a] motion for acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged") (internal quotation and citation omitted).

Slaughter urges us to interpret the district court's comments, when it ruled on the motion to acquit, as amounting to a reservation of any decision on the motion, not a denial. Such a reservation would violate Minnesota Rule of Criminal Procedure 26.03, subd. 17(2), which reads in relevant part: "If the defendant's motion is made at the close of the evidence offered by the prosecution, the court may not reserve decision of the motion." Slaughter relies on the following comments by the district court as showing reservation of the decision on the motion:

> I'm going to deny the motion at this time. Denying that, I'm not making any comment on the overall weight and credibility of the evidence, which I'm left to judge at the end of the case.

We recognize the importance of the prohibition against reserving ruling on a motion to acquit. Given the presumption of innocence and the state's burden to prove the offense, a defendant has no obligation to present any evidence and should not be put at risk of providing evidence that fills gaps in the state's case. But Slaughter's argument goes further. He suggests that to avoid violating the rule against reserving decision on a motion to acquit, the court in a bench trial must not only consider the sufficiency of the state's evidence but also its weight and credibility.

■■■ The state responds that the standard for deciding a motion to acquit is the same in a bench trial as in a jury trial. It points out that Rule 26.03, subd. 17(1), which requires acquittal if "the evidence is insufficient to sustain a conviction[,]" makes no distinction between a jury trial and a bench trial.[3] It argues that the sufficiency of the evidence standard does not contemplate that the court will determine the weight and credibility of the evidence but instead requires the court to view the evidence in the light most favorable to the state.

We agree with the state that the district court could properly deny the motion to acquit if it determined that the state's evidence, when viewed in the light most favorable to the state, was sufficient to sustain a conviction. We also agree that Love's testimony, corroborated to some extent by Jackson's testimony and the physical evidence, provided support for the charged offenses.

■■■ The state based the first count of aggravated robbery on Slaughter's possession of a dangerous weapon during the incident.[4] A knife-like object qualifies as a

---

3. We also have used the same standard of review for bench trials and jury trials when determining whether the evidence was sufficient to support a conviction. *Davis v. State,* 595 N.W.2d 520, 525 (Minn.1999) (*citing State v. Hough,* 585 N.W.2d 393, 396 (Minn. 1998)).

4. The statute provides: "Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggra-

dangerous weapon. *See State v. Moss*, 269 N.W.2d 732–33, 736 (Minn.1978) (upholding armed robbery conviction where defendant possessed a large pair of scissors during robbery). Both Love and Jackson testified that Slaughter brandished a knife-like object and, upon searching Slaughter, the police found a folding knife wrapped with a plastic bag in his pocket. This evidence was sufficient to sustain a conviction of aggravated robbery.

■ The state based the second count of aggravated robbery on Slaughter having inflicted bodily harm on Love by causing scratches on her neck during the robbery. Bodily harm is "physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7 (2004). These scratches represent demonstrable physical injury, sufficient to sustain a conviction of aggravated robbery. In addition, these scratches provide sufficient evidence of the "use of force" necessary to sustain a conviction of simple robbery.[5] Although a simple purse snatching usually constitutes theft, pushing or grabbing a person during that theft may constitute simple robbery. *See State v. Nash*, 339 N.W.2d 554, 557 (Minn.1983). Viewing Love's testimony in the light most favorable to the state, it was sufficient to allow a reasonable fact-finder to find that Slaughter committed simple robbery.

In this context, we interpret the district court's comments not as reserving decision on the motion to acquit, but as compartmentalizing its decision-making process by denying the motion based on the narrow sufficiency of the evidence standard while recognizing that a broader standard would apply to its fact-finding function at the conclusion of the trial. Accordingly, we conclude that the district court did not err in denying Slaughter's motion for acquittal.

## II.

■ We now turn to the issue of whether the district court had the discretion to consider and convict Slaughter of the lesser-included offense of theft from the person under Minn.Stat. § 609.52, subds. 2(1) and 3(3)(d)(i) (2004).[6]

■ We have stated that, in a jury trial, the district court must instruct on a lesser offense if the evidence warrants the instruction. *State v. Sessions*, 621 N.W.2d 751, 757 (Minn.2001). More specifically, we have said that the court must instruct the jury on a lesser-included offense when: (1) the offense in question is an included offense; and (2) a rational basis exists for the jury to convict the defendant of the lesser-included offense and acquit the defendant of the greater crime. *Id.*; *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).[7] The same standard

vated robbery in the first degree[.]" Minn. Stat. § 609.245, subd. 1 (2004).

5. Minnesota Statutes section 609.24 (2004) defines simple robbery: "Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery[.]"

6. Subdivision 2(1) provides that a person commits theft when he "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession[.]" Subdivision 3(3)(d)(i) makes the theft a felony where the property is "taken from the person of another[.]"

7. Minnesota Statutes section 631.14 (2004) also states that a "defendant may be found guilty of any offense necessarily included in

applies in a bench trial. *State v. Bouwman,* 354 N.W.2d 1, 6–8 (Minn.1984). In fact, in *Bouwman,* we recognized that the court in a bench trial could grant a motion to acquit of a greater charged offense but deny the motion as to all lesser-included offenses, including one that was not charged. *Id.*

Slaughter first argues that Love and Jackson are not to be believed and thus their testimony was not sufficient to support the conviction of theft from person. He presents an alternative explanation of the physical evidence. Slaughter suggests that Love's necklaces were broken and her neck scratched during the physical altercation she had with Jackson earlier in the day, which was serious enough to involve the police. He argues that Love's testimony is inconsistent and that Jackson lied to cover up his own responsibility for Love's injuries. He also argues that Jackson is unreliable because of his frequent use of crack cocaine. Slaughter asserts that his version of the events is supported by the testimony offered by Harris and the police officers.

Although the district court stated that it "didn't find any of the witnesses particularly credible," it also stated that it found Love credible to the extent that her testimony was corroborated by the "hard evidence" of scratches on her neck and broken necklaces that were found in various locations between the two houses. Thus, the court could reasonably have rejected Slaughter's alternative explanation and concluded that Slaughter took the necklaces.

Slaughter next argues that even if there was sufficient evidence to prove that he took Love's necklaces, there was insufficient evidence to prove that he intended to permanently deprive her of them. Al-

though the court did not specifically find that Slaughter intended to permanently deprive Love of her necklaces, we note that in a trial without a jury, "[i]f the court omits a finding on any issue of fact essential to sustain the general finding, it shall be deemed to have made a finding consistent with the general finding." Minn. R.Crim. P. 26.01, subd. 2. We have determined that intent is a "subjective state of mind usually established only by reasonable inference from surrounding circumstances." *State v. Schweppe,* 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975). The court reasonably could have concluded that Slaughter intended to permanently deprive Love of her necklace because the evidence supports the inference that he did not return them to her but instead discarded them, broken, between the two houses.

Finally, Slaughter argues that if the testimony of Love and Jackson is to be believed, it was improper to consider theft as a lesser-included offense because there was no rational basis for the court to acquit him of the three robbery charges. Slaughter reasons that the only evidence that he took the necklaces was the testimony of Love and Jackson and that they each testified that he ripped the necklaces from Love's neck with enough force to leave marks.

Slaughter's argument assumes a level of precision in fact-finding that is not realistic or required. We conclude that the district court could reasonably weigh the testimony of Love and Jackson in such a way as to provide a rational basis to acquit of robbery. The court could accept the testimony of Love and Jackson that Slaughter took the necklaces but reject their testimony that he did so with sufficient force to constitute robbery. The line between robbery and theft is one that calls for the fact-

that offense with which the defendant is charged in the indictment or complaint."

finder to exercise judgment, particularly when applying a burden of proof of beyond a reasonable doubt. Here, the court was persuaded "beyond a reasonable doubt that [Slaughter] took [the] necklaces," but was not persuaded "beyond a reasonable doubt that [he] used force or threat of imminent force against Stacy Love to overcome resistance or to compel acquiescence in the taking of the necklaces." Based on these findings, the district court did not err when it considered and convicted Slaughter of the lesser-included offense of theft from person.

Affirmed.