STATE of Minnesota, Respondent,

v.

**Danny Lee HORMANN, Appellant.**

No. A10–1872.

Court of Appeals of Minnesota.

Oct. 19, 2011.

Review Denied Jan. 17, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Chad Larson, Douglas County Attorney, Timothy S. Hochsprung, Assistant County Attorney, Alexandria, MN, for respondent.

Ted Sampsell–Jones, Special Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

MINGE, Judge.

Appellant Danny Lee Hormann challenges his convictions of stalking his then-wife and installing a mobile tracking device on her car, arguing (1) the district court abused its discretion by admitting testimonial evidence of his misconduct during the marriage; (2) the district court erred by denying his motion for acquittal and submitting the tracking-device charge to the jury; and (3) the stalking statute is unconstitutionally vague. We affirm the evidentiary ruling and the conviction of stalking, reverse the tracking-device conviction, and do not reach the constitutional question.

## FACTS

Appellant was charged with one count of stalking his then-wife, M.H., in violation of Minn.Stat. § 609.749, subd. 2(a)(2) (2008), and one count of using a tracking device on the vehicle driven by his wife in violation of Minn.Stat. § 626A.35, subd. 1. He pleaded not guilty, and the matter was set for a jury trial.

Prior to trial, appellant moved to exclude evidence of any prior bad acts. On the morning of trial, the prosecutor indicated that M.H. would testify about the general nature of her marriage to appellant, a January 18, 2010 incident of domestic abuse, and repeated occasions on which appellant had confronted her after locating her in places where he had no reason to know she would be. The prosecutor informed the court that this evidence was necessary to demonstrate that appellant knew that placing the tracking device on the car his wife was driving would cause her to feel frightened, which is one element of the stalking charge. The district court denied appellant's motion, ruling that both the general testimony about the marriage and the January 18 specific-incident testimony were admissible but cautioning the state that the testimony should be presented "without getting into a lot of specifics" and "delv[ing] into the prejudicial area where it would be cut off at some point by the Court."

The criminal complaint alleged that the stalking occurred "[o]n or about March 10, 2010." The record indicates that on March 10, 2010, M.H. had a mechanic inspect her car to look for a tracking device. The mechanic testified that he found a tracking device magnetically attached to the underside of the car. M.H. told police that she believed appellant had been monitoring her car's movements and that, in late 2009, appellant had unexpectedly located her in a lakeside cabin, entered the cabin, and physically attacked an acquaintance of M.H.'s. The complaint stated that the police determined that appellant had purchased the device and that the car was registered to M.H.

During the trial, when asked to describe her marriage to appellant, M.H. testified:

> [The marriage] hasn't been good for 20 years.... [T]here was a lot of fight-

ing.... [T]here was a lot of violence. [Appellant] gets very angry. He's very controlling. He controlled all the money.... Literally every door in the house had a hole in it or had been broken. There [were] holes in the wall. He drove his pickup through the back end of the garage because he was mad. I've had several bruises. I've been pushed up against the wall many times. I've been pushed, I've been shoved, I've been spit on, I've had beer poured on me.... [Appellant] didn't like me to have friends. He didn't like my family.

Appellant's counsel objected repeatedly to the general testimony but was sustained only once with respect to a nonresponsive answer.

M.H. also testified that, after she informed appellant in October 2008 that she intended to divorce him, appellant became obsessive about her whereabouts, acquaintances, and social life. She testified that appellant put spyware on her cell phone that allowed him to intercept her text messages and that he also seemed to know everything she was doing on the family computer. She said she became specifically concerned about a tracking device on her car because appellant always seemed to know where she had been after she used the car.

M.H. gave detailed additional testimony about four prior incidents. Three occurred in late 2009. In one, appellant demonstrated a knowledge of where she had been after she returned home; in the other two, he confronted her in locations (including a remote lakeside cabin she thought was unknown to appellant) without her having told him where she would be. On each occasion, M.H. had been using the car on which the tracking device was later found. M.H. also testified about the January 18, 2010, incident. It involved domestic violence and precipitated her moving out of the family home. She stated that after she moved out, appellant continued to send her text messages, commenting on where she had been and otherwise indicating that he was still monitoring her movements. The mechanic testified that the tracking device was activated when he found it.

At the close of evidence, appellant moved for an acquittal on the tracking-device charge, asserting that his marital interest in the car exempted him from prosecution. See Minn.Stat. § 626A.35, subd. 2a (2008) (providing that the prohibition does not apply when the owner has consented to the attachment of the tracking device). He also pointed out that M.H. signed the title to the car over to him prior to March 10, 2010, to facilitate its sale. The prosecution countered that the transfer was never completed by filing documents with the state Department of Public Safety. Appellant argued that the ownership of the vehicle was a question of law that should not be submitted to the jury. The district court denied the motion and submitted the ownership question to the jury, which found appellant guilty on both the stalking and the tracking-device counts. The district court sentenced appellant on the stalking conviction; it imposed no sentence on the tracking-device conviction. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by admitting evidence of bad acts committed by appellant during his marriage to M.H.?

II. Did the district court err by denying appellant's motion for acquittal on the tracking-device charge?

III. Is the stalking statute unconstitutionally vague?

## ANALYSIS

## I. BAD ACTS EVIDENCE

Appellant challenges the district court's decision to admit M.H.'s (1) general testimony about her marriage to appellant; and (2) specific testimony about the four incidents that occurred in late 2009 and in January 2010. Appellant argues that, to the extent M.H.'s testimony describes alleged prior bad acts, it is character evidence under Minn. R. Evid. 404(b) and inadmissible because the state failed to comply with applicable procedural safeguards prior to introducing the evidence.

■ We will not reverse the district court's admission of evidence of other crimes or bad acts unless appellant can demonstrate both an abuse of discretion and that he was prejudiced by the erroneous admission. *State v. Ness*, 707 N.W.2d 676, 685 (Minn.2006). If the district court has erred in admitting evidence, we must determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994).

The record reflects that the parties and the court reviewed four bases for admitting M.H.'s general and specific testimony about appellant's marriage to M.H.: as *Spreigl* evidence, under Minn. R. Evid. 404(b); as res gestae (immediate-episode) evidence; as evidence of similar conduct against the victim of domestic abuse under Minn.Stat. § 634.20 (2008); or as relationship evidence governed by Minnesota caselaw. We address each in turn.

### A. *Spreigl* /404(b) Evidence

Evidence of prior bad acts generally "is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). This is also known as *Spreigl* evidence.

*State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). But *Spreigl* evidence may be admissible to prove other things, such as motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident, provided the state complies with various procedural safeguards. Minn. R. Evid. 404(b); *Spreigl*, 272 Minn. at 491, 139 N.W.2d at 169.

■ Appellant vigorously argues that the challenged evidence was not admissible as *Spreigl* evidence. We agree. Indeed, the record indicates that the state did not offer the testimony concerning the marriage as *Spreigl* or rule 404(b) evidence. Rather, as we observe below, the testimony bore directly on the history of the existing relationship between appellant and M.H. and was relevant in demonstrating, as was the state's burden, that appellant had reason to know that attaching the tracking device to M.H.'s car would cause her to feel fearful. Such relationship evidence is not *Spreigl* evidence. *See State v. Kanniainen*, 367 N.W.2d 104, 106 (Minn. App.1985) (rejecting *Spreigl* argument when evidence "bore directly on the history of the relationship existing between the two parties"). Accordingly, the *Spreigl* analysis is inapposite, and we turn to other bases for admission of the evidence.

### B. Immediate-episode evidence

The state argues that the contested evidence is so "intimately tied" to the stalking offense that it needed to be offered as substantive proof of the crime. The state is essentially contending that evidence of M.H. and appellant's marriage relates to offenses or misconduct that were a part of the "immediate episode for which [a] defendant is being tried." *See State v. Townsend*, 546 N.W.2d 292, 296 (Minn. 1996) (quotation omitted).

"Immediate-episode evidence is a narrow exception to the general character evidence rule." *State v. Riddley,* 776 N.W.2d 419, 425 (Minn.2009). Other-crime evidence is admissible as immediate-episode evidence "where two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other, or where evidence of other crimes constitutes part of the res gestae." *State v. Wofford,* 262 Minn. 112, 118, 114 N.W.2d 267, 271 (1962); *see Riddley,* 776 N.W.2d at 425–26. "Res gestae" means "[t]he events at issue, or other events contemporaneous with them." *Black's Law Dictionary* 1423 (9th ed.2009).

Appellant argues that the *Riddley* decision transformed *Wofford*'s disjunctive admissibility test for immediate-episode evidence into a conjunctive test that requires a close relationship on both *Wofford* issues—time *and* causation. We recognize that the *Riddley* court deemed prior-misconduct evidence to be inadmissible despite first finding "a close connection in terms of the time ... between the charged offenses and" the challenged bad-acts evidence because it later found that "there is not a close causal connection" between them. *Riddley,* 776 N.W.2d at 426–27. But we do not read *Riddley* as having conflated the two *Wofford* issues in all cases. We read it for the narrower proposition that a close causal relationship must exist between the evidence of prior bad acts and the charged offense to admit the bad-acts evidence under the immediate-episode-evidence exception; that is, a temporal link alone may be insufficient. The cases cited approvingly by *Riddley* to explain the exception affirmed the admissibility of evidence because the evidence had a strong causal link to the offense even without a close temporal link. *See, e.g., State v. Martin,* 293 Minn. 116, 128, 197 N.W.2d 219, 226–27 (1972) (affirming admissibility of evidence of victim's threats to report older crimes because the evidence established a motive for the charged killing); *see also State v. Nunn,* 561 N.W.2d 902, 908 (Minn.1997) (affirming admissibility of evidence of kidnapping that occurred one month before the charged killing because the kidnapping evidence established the motive for the killing).

Here, the criminal complaint specifies that the stalking offense occurred "[o]n or about March 10, 2010." [1] In light of this narrow time frame, appellant argues that his prior acts, some of which took place years previously, are not properly part of the substantive proof of the stalking offense.

However, some of appellant's prior bad acts were admitted to establish that his former wife became fearful on discovering that he was monitoring her movements with the tracking device. Although this evidence might not demonstrate a close temporal link establishing admissibility under the immediate-episode-evidence doctrine, it is consistent with the causal-link alternative basis for admissibility because victim fear is an element of the stalking offense. *See* Minn.Stat. § 609.749, subds. 1, 2 (2008) (defining stalking to require proof that the victim felt "frightened, threatened, oppressed, persecuted, or intimidated"). We need not consider the doctrine further here, however, because the concept of relationship evidence, discussed below, is a broader basis for admissibility of the same evidence.

---

1. The state's argument that "on or about" might reasonably be expanded to include acts that occurred months, or years, prior to March 10, 2010 is similarly unavailing. The district court denied the state's motion to amend the complaint to base the stalking charge on incidents occurring over an expanded time frame.

## C. Minn.Stat. § 634.20

■ The district court stated that evidence of the January 18, 2010 episode of domestic violence was likely admissible under Minn.Stat. § 634.20, which provides for the admission of "[e]vidence of similar conduct by the accused against the victim of domestic abuse," subject to certain procedural safeguards. To trigger admissibility under section 634.20, the currently charged offense must constitute domestic abuse. *See State v. McCurry,* 770 N.W.2d 553, 561 (Minn.App.2009) (stating that "[w]hen the state cannot charge a crime constituting domestic abuse, it may not use § 634.20 to circumvent rules of admissibility for prior bad acts"), *review denied* (Minn. Oct. 28, 2009).

Here, the state does not contend that stalking or the illegal use of a tracking device, as defined, constitutes domestic abuse and does not claim that section 634.20 is applicable. *See* Minn.Stat. §§ 518B.01, subd. 2(a) (2008) (defining domestic abuse); 609.749, subd. 2(a)(2) (defining stalking); 626A.35, subd. 1 (defining illegal use of a tracking device). Thus, we do not further consider the use of section 634.20 as a basis for admitting evidence of the general relationship or the four specific incidents, including the January 18, 2010 domestic-abuse incident.

## D. Relationship Evidence

■ Minnesota caselaw has established a basis for the introduction of relationship evidence independent of Minn.Stat. § 634.20, the *Spreigl*/rule 404(b) process, or the immediate-episode doctrine: "[R]elationship evidence is character evidence that may be offered to show the strained relationship between the accused and the victim . . . [and] such evidence has further probative value when it serves to place the incident for which appellant was charged into proper context." *State v. Loving,* 775

N.W.2d 872, 880 (Minn.2009) (quotations omitted). Minnesota precedent requires neither an underlying domestic-abuse charge nor *Spreigl*/rule 404(b) notice prior to the introduction of relationship evidence. *State v. Boyce,* 284 Minn. 242, 260, 170 N.W.2d 104, 115 (1969). Courts typically apply parts of the *Spreigl*/rule 404(b) analysis to relationship evidence. *See State v. Bauer,* 598 N.W.2d 352, 364 (Minn. 1999) (applying *Spreigl* analysis to relationship evidence by requiring the district court to find by clear and convincing evidence that defendant committed the prior act and that the probative value of the evidence outweighs any unfair prejudice).

### 1. Four Incidents

■ Based upon our careful review of the transcript, we conclude that M.H.'s testimony concerning the four specific incidents that occurred after October 2008 was admissible as relationship evidence as the doctrine has developed in Minnesota caselaw. The state's express purpose in offering the evidence was to establish the context in which the charged conduct occurred, appellant's intent, and the effect his actions had on his wife. M.H.'s testimony about the four incidents also meets the balancing requirements of rule 404. Appellant argues that the January 18 incident was not proved by clear and convincing evidence. But that standard can be met by the uncorroborated testimony of a single witness, even if that witness is the victim of the charged offense. *State v. Kennedy,* 585 N.W.2d 385, 389–90 (Minn. 1998). Because M.H. testified about the incident, the standard is met.

■ Appellant also contends that the testimony about the four specific incidents was not relevant and was unfairly prejudicial. But, the four specific incidents were clearly probative of appellant's strained relationship with M.H. and assisted the jury

in determining why appellant engaged in the charged stalking conduct. *See Loving,* 775 N.W.2d at 880 (concluding that relationship evidence helped establish, among other things, motive and intent). The stalking charge cannot be proved without some context: in order to demonstrate why M.H. was frightened when she suspected (and then confirmed) that appellant was tracking her, the state needed to establish that appellant had given her reason to fear him through his repeated confrontational and intimidating conduct and his use of technology to monitor her movements and communications. We conclude that the evidence of the four specific incidents was admissible to demonstrate appellant's relationship with M.H.

### 2. General Marital Relationship

▉▉ We next address the admissibility of M.H.'s more general statements about the marriage. Those statements, which were made early in M.H.'s testimony (and over repeated objections that the testimony was narrative and nonresponsive), lack the specificity of the testimony concerning the four discrete incidents. Instead, the statements broadly, and without temporal specificity, characterize appellant as someone who, during a 20–year marriage, broke every door in the couple's home, broke the walls, physically abused his wife, engaged in "a lot of violence," was "very angry," "controlled all the money," didn't want his wife to have friends, and continually subjected her to humiliating, controlling, and hostile behavior.

In short, although M.H.'s general testimony about the marriage was only marginally relevant to establish why she believed her car was being tracked by appellant, the testimony—which is devoid of detail as to time, place, circumstance, or context—presents the risk of leading the jury to improperly conclude that appellant has a propensity to behave criminally and should now be convicted, and punished, for the charged offenses. *See Old Chief v. United States,* 519 U.S. 172, 180–82, 117 S.Ct. 644, 650–51, 136 L.Ed.2d 574 (1997) (noting that evidence of prior bad acts often "rais[es] the odds" that defendant committed the charged act "or, worse," promotes "preventive conviction" regardless of guilt, and noting that "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance" (quotation omitted)); *Townsend,* 546 N.W.2d at 296 (holding prolonged description of prior-crimes evidence prejudicial because it improperly "inflame[d] the jury"); *State v. DeWald,* 464 N.W.2d 500, 504 (Minn.1991) (noting that preventing a "conviction based on prejudice created by evidence of other crimes is the underlying purpose" for excluding such evidence).

This open-ended and narrative testimony had little apparent value other than to establish appellant's bad character and was unnecessary in light of the specific-incident testimony. We note that the district court warned the state that if too much relationship or res gestae evidence was being introduced, the court would "cut [it] off." However, the cutoff did not occur. The limited probative value of the evidence was outweighed by the danger of prejudice and the district court abused its discretion by admitting it. We therefore must proceed to determine whether the error was harmless. *State v. Vanhouse,* 634 N.W.2d 715, 721 (Minn.App.2001), *review denied* (Minn. Dec. 11, 2001).

### E. Harmless Error

▉▉ The erroneous admission of evidence is "harmless if there is no reasonable possibility that the wrongfully admit-

ted evidence significantly affected the verdict." *State v. Robinson,* 718 N.W.2d 400, 407 (Minn.2006) (quotations omitted). It is true that the disputed testimony was prejudicial because it showed appellant to be an angry, violent, and controlling person without furnishing relevant and probative details that could assist the jury in its role as finder of fact; but reversal requires more.

Our review of the record leads us to conclude that the wrongfully admitted evidence did not unfairly lead to appellant's conviction. The proof is overwhelming that appellant had a tracking device affixed to the car which M.H. drove and that he confronted her in an intimidating manner with the information gathered from this device. The admission of testimony concerning the four specific incidents after October 2008 reasonably assisted the jury to determine that appellant knew his conduct would cause his wife to feel threatened. The properly admitted evidence of M.H.'s acquaintances concerning the impact of appellant's surveillance on M.H. reinforced her testimony. Although the general relationship evidence was excessive, on this record we find no reasonable possibility that it significantly affected the verdict. We conclude that the district court's erroneous admission of that evidence was, therefore, harmless.

## II. TRACKING–DEVICE CHARGE

The second issue is whether appellant's use of the tracking device violated Minn. Stat. § 626A.35, subd. 1.[2] Appellant argues that the district court erred in denying his motion for acquittal (made at the close of the state's case) because he had an ownership interest in the car sufficient to preclude conviction under Minn.Stat. § 626A.35, subd. 1. That statute, by its terms, does not apply "where the consent of the owner of the [vehicle] to which the mobile tracking device is to be attached has been obtained." Minn.Stat. § 626A.35, subd. 2a. Appellant contends that because he had a marital interest in the vehicle and because its title had been signed over to him, he could not be prosecuted under the statute. Appellant further contends that because the ownership of the vehicle was a question of law, the district court erred by submitting it to the jury.

"A motion for acquittal is procedurally equivalent to a motion for a directed verdict." *State v. Slaughter,* 691 N.W.2d 70, 74 (Minn.2005). The standard for deciding a motion for a directed verdict is whether, after viewing the evidence and all resulting inferences in the light most favorable to the state, the evidence is sufficient to present a fact question for the jury. *Id.* at 74–75. A district court may grant a motion to acquit if it determines that the state's evidence, when viewed in the light most favorable to the state, is insufficient to sustain a conviction. *See id.* at 75.

The question of vehicle ownership may be a question of fact for the jury. *See Holland Am. Ins. Co. v. Baker,* 272 Minn. 473, 478–79, 139 N.W.2d 476, 480 (1965) (reviewing district court's finding as to ownership in the context of an insurance dispute involving the policy's "temporary substitute vehicle" clause and the applicable principles with respect to giving an automobile as a gift). But here, appellant's conviction turns on the meaning of

---

**2.** We note that this section and other provisions of the law dealing with such devices focus on prohibiting their improper use by law enforcement. *See* Minn.Stat. §§ 626A.35–391 (2008). However, the statutes do not exempt improper use by individuals. *Id.* The parties have not addressed the reach of the statutes, and we do not consider the question.

the word "owner" in the tracking-device statute; appellant's right, as a spouse, to the car; and the affect of M.H.'s signing title to the car over to him. Statutory interpretation and the determination of whether an asset is marital property are questions of law that we review de novo. *See Savig v. First Nat'l Bank of Omaha*, 781 N.W.2d 335, 338 (Minn.2010) (statutory interpretation); *Gottsacker v. Gottsacker*, 664 N.W.2d 848, 852 (Minn.2003) (marital property).

## A. The Statutes

 The term the "owner" is not defined in the tracking-device statute, which refers only to "the owner of the object to which the mobile tracking device is to be attached." Minn.Stat. § 626A.35, subd. 2a. We conclude that, as used in this provision, the term "owner" is ambiguous because, by placing the definite article "the" prior to the term "owner," the statute appears to exclude the possibility that an "object" may have more than one owner and because it does not address what property interest constitutes ownership for the purposes of the statute. *See Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986) (stating that "[a] statute is ambiguous when it can be given more than one reasonable interpretation"). When a statutory provision is ambiguous, we follow the canons of statutory construction to ascertain the statute's meaning. *Id.* at 706–07.

 "The doctrine of *in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language." *State v. Lucas*, 589 N.W.2d 91, 94 (Minn.1999). We conclude that where, as here, a tracking device is being applied to a vehicle, Minn.Stat. § 626A.35, subd. 2a, and Minn.Stat. §§ 168A.01.40 (2008) (the vehicle-title stat-utes) are in pari materia and may be construed together. The vehicle-title statutes define a vehicle "owner" as "a person, other than a secured party, having the property in [sic] or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security." Minn.Stat. § 168A.01, subd. 13. Nothing limits ownership to only one person. The evidence at trial established that, although M.H. drove the car the overwhelming majority of the time and appellant would need her permission to use the car, appellant nonetheless had the requisite use and possession of the vehicle and did drive it on occasion.

## B. Marital Interest

 This brings us to the issue of whether appellant, as a spouse, had an interest in the vehicle sufficient to allow him to place the tracking device on it. "All property acquired by either spouse during the marriage is presumptively marital, but a spouse may defeat the presumption by showing by a preponderance of the evidence that the property acquired is nonmarital." *Baker v. Baker*, 753 N.W.2d 644, 649–50 (Minn.2008) (citing Minn.Stat. § 518.003, subd. 3b (2006)). At trial, M.H. testified that she and appellant purchased the car with marital funds. The vehicle was therefore presumptively marital property.

The state did not present evidence to rebut the presumption that, because the car was acquired during the marriage with marital funds, appellant had a marital interest in it. We also note that the record reflects that, on occasion, appellant drove the vehicle. Tellingly, in response to a question posed at the appellate oral argument, the state acknowledged that it would not prosecute appellant for auto theft were

M.H. to report that the car was stolen because appellant was driving the car without her consent. This reflects the understanding that appellant, as a spouse, had access to and an interest in the vehicle.

### C. Title to the Vehicle

To defeat the marital presumption, the prosecution presented the title records from the Minnesota Department of Public Safety showing that M.H. is the sole registered owner. But, the title documents in the possession of appellant and M.H. and the testimony at trial show that M.H. signed the title over to appellant in June 2009. Although that transfer was never recorded and there is testimony that M.H. signed over the title to facilitate a sale (that fell through), it is noteworthy that the vehicle's documents in the couple's home files show appellant to be the owner. Furthermore, this transfer demonstrates how, in a marriage relationship, incidents of formal ownership of marital property may not accurately reflect who is using a vehicle.

### D. Rule of Lenity

■■■■ "When the language of a criminal law is ambiguous, we construe it narrowly according to the rule of lenity." *State v. Maurstad,* 733 N.W.2d 141, 148 (Minn.2007). "The rule of lenity holds that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity toward the defendant." *State v. Stevenson,* 637 N.W.2d 857, 862 (Minn.App. 2002). Our construction of "the owner," consistent with the rule of lenity, leads us to conclude that the statutory exception applies when the vehicle or object to which the tracking device is attached has multi-ple owners, one of whom has consented to the tracking device.

Finally, we note that the statute does not criminalize an owner's attaching such a device to a vehicle in which he has an ownership interest. That would be absurd. *See* Minn.Stat. § 645.17(1) (2010) (stating that courts may presume that legislature does not intend absurd results). We conclude that because appellant presumptively had a marital interest in the car and because he had an unfiled title interest in the car, he had a right of access that made him an "owner" within the meaning of Minn.Stat. § 626A.35, subd. 2a; that appellant is not subject to prosecution under that statute for attaching the tracking device; and that the district court erred by submitting the issue to the jury instead of granting appellant's motion for acquittal. We therefore reverse appellant's conviction for violating Minn.Stat. § 626A.35, subd. 1.[3]

### III.

■■■ Appellant argues that the stalking statute, Minn.Stat. § 609.749, is unconstitutionally vague. Because appellant did not raise this argument to the district court, and because "[t]he law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal," *State v. Engholm,* 290 N.W.2d 780, 784 (Minn.1980), we do not reach the constitutional question.

### DECISION

Although the district court erred by admitting excessive general relationship evidence that included appellant's bad character and propensity for criminality, we conclude that the error was harmless and

---

**3.** Because we conclude that the district court erred by denying appellant's motion for acquittal and submitting the tracking-device is-sue to the jury, we do not address appellant's arguments that the jury instructions were erroneous.

affirm appellant's conviction for stalking. But because the car to which the tracking device was attached was presumptively marital property and because the title documents in appellant's possession showed that the title was signed over to him, we conclude that he had a sufficient ownership interest to exclude him from prosecution under Minn.Stat. § 626A.35, subd. 2a and that the district court erred by denying his motion for acquittal on the tracking-device charge. Accordingly, we reverse appellant's conviction on that charge.

**Affirmed in part and reversed in part.**