*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0038**

State of Minnesota,
Respondent,

vs.

Abe Joseph Boushee,
Appellant.

**Filed January 20, 2015
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Polk County District Court
File No. 60-CR-12-2891

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Polk County jury found Abe Joseph Boushee guilty of making a terroristic threat based on evidence that he threatened his wife by saying, "I'll cave your f--king head in." On appeal, Boushee seeks a new trial based on various asserted procedural

errors and, in the alternative, challenges the issuance of a postconviction probationary domestic abuse no-contact order. We conclude that the district court did not commit any procedural errors during the trial. But we conclude that the district court erred by issuing a postconviction probationary domestic abuse no-contact order after sentencing Boushee to prison. Therefore, we affirm in part, reverse in part, and remand with instructions to vacate the postconviction probationary domestic abuse no-contact order.

## FACTS

This appeal arises from an incident between Boushee and his wife, N.B., on the evening of December 21, 2012, at their home in East Grand Forks. Boushee looked at his wife's smartphone and saw a Facebook message from another man that said, "Goodnight, Beautiful." Boushee demanded information about the man and accused N.B. of infidelity. According to N.B.'s trial testimony, Boushee went on a "rampage," pushed her, and threatened her by saying, "I'll cave your f--king head in." N.B. testified that Boushee yelled, cursed, and insulted her until he fell asleep at approximately 4:00 a.m. During part of the evening, Boushee sent her text messages that accused her of having an affair. The next morning, when Boushee and his wife quarreled further, she sent a text message to her mother, asking her to contact the police. Officer Andrew Boen arrested Boushee. Later that day, a police officer interviewed N.B., and the interview was audio-recorded.

The state charged Boushee with one count of making a terroristic threat, in violation of Minn. Stat. § 609.713, subd. 1 (2014), and one count of felony domestic assault, in violation of Minn. Stat. § 609.2242, subds. 1(1), 4 (2014). The case was tried

2

on two days in February 2013.  The state called four witnesses in its case-in-chief: N.B. and three police officers.  Boushee did not testify.  The jury found Boushee guilty of making a terroristic threat but not guilty of domestic assault.  The district court sentenced Boushee to 33 months of imprisonment.  Immediately after the sentencing hearing, the district court imposed a postconviction probationary domestic abuse no-contact order (DANCO).  Boushee appeals.

## D E C I S I O N

### I.  Relationship Evidence

Boushee first argues that the district court erred by admitting evidence relating to the relationship between him and his wife.  Specifically, Boushee challenges N.B.'s testimony that, at times in the past, Boushee threatened her, assaulted her, attempted to control her by monitoring her activities and communication with others, and engaged in bouts of extreme anger.

Boushee did not object at trial to the evidence that he challenges on appeal.  Accordingly, we review the district court's admission of the evidence for plain error.  *See* Minn. R. Crim. P. 31.02.  Under the plain-error test, we may not grant appellate relief unless (1) there is an error, (2) the error is plain, and (3) the error affects the defendant's substantial rights.  *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).  An error is "plain" if it is clear or obvious under current law, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002), and an error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct," *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).  If the first three requirements are met, the court will correct the error "only if it seriously affects the

3

fairness, integrity, or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But such evidence may be admissible for another purpose, such as evidence of past abuse or threats against the victim in order to show a strained relationship. *State v. Bauer*, 598 N.W.2d 352, 365 (Minn. 1999). "Character evidence which tends to show the 'strained relationship' between the accused and the victim is relevant to establishing motive and intent and is therefore admissible." *State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997). Evidence of a defendant's prior acts also may be relevant "for the purpose of illuminating the relationship of defendant and complainant and placing the incident with which defendant was charged in proper context." *Bauer*, 598 N.W.2d. at 364 (quotation omitted).

In addition, in a prosecution for domestic abuse:

> Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20 (2014); *see also State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). Evidence admitted pursuant to section 634.20 is commonly known as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). Section 634.20 applies only in domestic-abuse cases, *see State v. Barnslater*, 786 N.W.2d 646,

4

650 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010), and "allows much more latitude" than the exception to rule 404(b), *State v. Word*, 755 N.W.2d 776, 784 (Minn. App. 2008). Because Boushee and N.B. were married at the time of the conduct at issue, section 634.20 applies. *See* Minn. Stat. § 518B.01, subd. 2(b)(1) (2014); *Word*, 755 N.W.2d at 783.

In this case, N.B.'s testimony about the prior incidents was relevant because the charges of domestic assault and terroristic threats stemmed from Boushee's strained relationship with his wife. To establish the offense of domestic assault, the state was required to prove that Boushee intended to cause fear of immediate bodily harm or death. Minn. Stat. § 609.2242, subd. 1(1). To establish the offense of making a terroristic threat, the state was required to prove that Boushee threatened N.B. "with purpose to terrorize" or "in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. Boushee's history of angry, controlling, threatening, and assaultive behavior has probative value because it may have helped the jury to determine whether Boushee intended to terrorize his wife or to make her fearful that he would carry out his threat to "cave [her] head in." The supreme court has stated and restated that "the 'interests of justice are best served' by admitting relationship evidence when it provides context for the crime charged" because "[t]he crime of domestic abuse is 'unique in that it typically occurs in the privacy of the home, it frequently involves a pattern of activity that may escalate over time, and it is often underreported.'" *Matthews*, 779 N.W.2d at 553 (quoting *McCoy*, 682 N.W.2d at 159, 161). The appellate courts have fulfilled the purpose of section 634.20 by affirming the introduction of relationship evidence in

5

similar situations.  *See, e.g.*, *Matthews*, 779 N.W.2d at 553; *McCoy*, 682 N.W.2d at 161; *Word*, 755 N.W.2d at 784.

Boushee contends that, even if evidence of specific prior incidents is admissible, the district court nonetheless erred by admitting other evidence that described his relationship with N.B. in a more general way.  He cites *State v. Hormann*, 805 N.W.2d 883 (Minn. App. 2011), *review denied* (Minn. Jan. 17, 2012), a case in which this court held that a district court erred by admitting "open-ended and narrative testimony [that] had little apparent value other than to establish appellant's bad character and was unnecessary in light of the specific-incident testimony."  *Id.* at 891.  The *Hormann* opinion is readily distinguishable because the state charged the defendant with stalking and installing a tracking device on his wife's vehicle, but the state did not charge the defendant with domestic abuse.  *Id.* at 886-87.  Accordingly, this court reasoned that section 634.20 did not apply.  *Id.* at 890.  The caselaw interpreting section 634.20 is more permissive.  *See, e.g.*, *Word*, 755 N.W.2d at 784.

Thus, the district court did not err by admitting evidence of Boushee's relationship with N.B.  In light of that conclusion, we need not analyze the other requirements of the plain-error test.

## II.  Evidence of Prior Police Contact and Incarceration

Boushee also argues that the district court erred by admitting irrelevant and unduly prejudicial evidence about his prior contacts with law enforcement and his prior incarceration.  Boushee did not preserve an objection to this evidence at trial.  Thus, we apply the plain-error test.  *See* Minn. R. Crim. P. 31.02; *Griller*, 583 N.W.2d at 740.

6

## A.    Prior Police Contact

Officer Boen testified at trial about his arrest of Boushee.  In the course of his testimony, he mentioned that he had stopped Boushee's vehicle for another reason approximately one month earlier.

It is well-settled that "references to prior incarceration of a defendant can be unfairly prejudicial."  *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006) (emphasis omitted); *see also State v. Hjerstrom*, 287 N.W.2d 625, 627-28 (Minn. 1979).  But not every such reference is inadmissible.  For example, in *State v. Clark*, 486 N.W.2d 166 (Minn. App. 1992), this court concluded that an officer's "passing reference" was "benign" and "did not necessarily suggest [the defendant] had a prior record."  *Id.* at 170 (citing *State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978)).

In this case, Officer Boen testified only to a traffic stop; he did not testify about the reasons for the traffic stop, or whether the traffic stop led to a criminal prosecution.  As such, the officer's testimony did not suggest that Boushee had a criminal record.  Boushee argues that under the reasoning of *Strommen*, the district court should have stricken the testimony.  However, Officer Boen's reference to the prior traffic stop is much less prejudicial than the evidence in *Strommen*, in which the officer testified to multiple prior contacts and incidents, and those references were especially prejudicial because another witness had testified that the defendant had killed a person during a fight.  *Strommen*, 648 N.W.2d at 684-85.

Thus, the district court did not err by not *sua sponte* excluding Officer Boen's testimony that he previously had stopped Boushee's vehicle.

**B.     Prior Incarceration**

Boushee challenges two different forms of evidence that he previously had been incarcerated. First, in the state's direct examination of N.B., the prosecutor asked, "And how have you tried to work things out over the years?" In the course of her answer, N.B. mentioned that "there was a time period where we were split up" and that Boushee "was actually incarcerated at the time." Second, the state offered into evidence an audio-recording of the police interview of N.B. During the course of that interview, N.B. mentioned that, after her son was born, Boushee "was on work release then, and I'd pick him up from jail and take him to work."

A reference to a defendant's prior incarceration may be unfairly prejudicial and, thus, inadmissible. *See Manthey*, 711 N.W.2d at 506; *Hjerstrom*, 287 N.W.2d at 627-28. But the admission of such evidence is not reversible error if the state did not intentionally elicit the testimony, the statement was merely a "passing" reference, and the evidence supporting guilt was "overwhelming." *Haglund*, 267 N.W.2d at 505.

The first piece of challenged evidence fits squarely within the *Haglund* exception. There is no indication that the prosecutor sought to elicit testimony from N.B. that Boushee previously had been incarcerated. Rather, it appears that N.B., who presumably is not an experienced witness, included that information in her answer unnecessarily and unexpectedly. Furthermore, N.B.'s reference to his prior incarceration was quite brief and, thus, may be considered a mere passing reference. *See id.*

The second piece of challenged evidence is somewhat more problematic. The police interview of N.B. was submitted into evidence in the form of an audio-recording

on a CD, which was prepared by the prosecutor before trial and was marked as exhibit 8. For purposes of exhibit 8, the prosecutor edited the audio-recording by omitting certain portions of the interview. The prosecutor did not omit N.B.'s reference to Boushee's prior work release. It is unclear whether the pre-recorded reference to work release was included intentionally or inadvertently. *See id.* Defense counsel's failure to object at trial frustrates our review because it prevented counsel from making a record as to how or why N.B.'s reference to work release was not omitted from exhibit 8. It is fairly clear, however, that the remark by N.B. was made in "passing" because the audio-recording contains only a brief allusion to Boushee's prior incarceration in the course of a recording that is more than 46 minutes long. *See id.*

The most significant factor relating to both pieces of challenged evidence is that the state's evidence against Boushee was "overwhelming." *See id.* N.B. testified without contradiction that Boushee threatened her and later asked her to tell police that she lied about his threat. Text messages that Boushee sent to N.B. on both the night in question and the following day corroborate the timing and the substance of N.B.'s testimony. The overwhelming nature of the state's evidence alleviates the concerns about the potentially prejudicial nature of the challenged evidence.

Thus, the admission of evidence of Boushee's prior incarceration does not require the reversal of Boushee's conviction and a new trial.

### III. Jury's Review of Audio-Recording

Boushee next argues that the district court erred by allowing the jury to review the audio-recording of the police interview of N.B. in the jury's deliberation room rather than in open court.

During its deliberations, the jury sent a note to the judge requesting a CD player so that they could listen to exhibit 8, the CD with the audio-recording of the police interview of N.B. The district court consulted with the prosecutor and defense counsel, and both attorneys agreed that the district court should comply with the request by providing the jury with a CD player for their use in the deliberation room. Because Boushee's trial counsel agreed to the procedure that he now challenges on appeal, any error would be an invited error. *State v. Goelz*, 743 N.W.2d. 249, 258 (Minn. 2007). But in Minnesota, an invited error nonetheless may be grounds for reversal if the appellant can satisfy the plain-error test. *Id.*

Boushee's argument is based on a rule of criminal procedure, which provides, "Any jury review of depositions, or audio or video material, must occur in open court." Minn. R. Crim. P. 26.03, subd. 20(2)(b). The same rule also provides that an audio-recording is not allowed in the jury room. Minn. R. Crim. P. 26.03, subd. 20(1). The district court obviously did not comply with these provisions of the rules of criminal procedure. Thus, the district court erred, and its error is plain.

The next issue is whether Boushee can satisfy the third requirement of the plain-error test, which asks whether the plain error affected his substantial rights. *See Griller*,

583 N.W.2d at 740. Boushee bears the burden of establishing that "there is a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." *State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007) (quotation marks omitted). More specifically, Boushee must show that, but for the district court's plain error, the result of the trial would have been more favorable for him because he would have been acquitted, not convicted. *See State v. Pearson*, 775 N.W.2d 155, 163 (Minn. 2009). Boushee has not satisfied this standard. In his brief, he merely speculates that jurors might have listened to the audio-recording repeatedly or selectively, thereby giving it undue prominence. His speculation is insufficient to establish a reasonable likelihood that the jury's review of the audio-recording in open court, rather than in the deliberation room, would have led to his acquittal instead of his conviction.

Thus, the district court's plain error in allowing the jury to review an audio-recording in the deliberation room rather than in open court does not require the reversal of Boushee's conviction and a new trial.

### IV. Postconviction Probationary DANCO

Boushee argues that the district court erred by issuing a postconviction probationary DANCO after sentencing him to prison.

A district court may issue a DANCO against a person who is charged with or has been convicted of domestic abuse. Minn. Stat. § 629.75, subd. 1 (2014). The district court may issue a DANCO either "as a pretrial order before final disposition of the underlying criminal case or as a postconviction probationary order." Minn. Stat. § 629.75, subd. 1(b). When issuing a DANCO, the district court shall convene "a

11

proceeding that is separate from but held immediately following a proceeding in which any pretrial release or sentencing issues are decided," *id.* § 629.75, subd. 1(c), and the issuance of a DANCO "is independent of any condition of pretrial release or probation imposed on the defendant," *id.* § 629.75, subd. 1(b). For purposes of a DANCO, the term "domestic abuse" includes the offense of making a terroristic threat against a spouse. *Id.* § 629.75, subd. 1(a)(1); *see also* Minn. Stat. § 518B.01, subds. 2(a)(3), 2(b)(1) (2012); Minn. Stat. § 609.713, subd. 1.

In this case, the district court conducted a DANCO proceeding immediately after Boushee's sentencing hearing. The district court granted the state's request and ordered a postconviction probationary DANCO that prohibits Boushee from having contact with N.B. until further order of the court. Boushee contends that the district court did not have authority to impose a postconviction probationary DANCO pursuant to section 629.75, subdivision 1(b), because the district court did not order probation but, rather, sentenced him to prison. Boushee's contention is supported by the plain language of the statute, which indicates that a "postconviction probationary order" may be issued only if a person has been placed on probation. *See* Minn. Stat. § 629.75, subd. 1(b). The state agrees with Boushee and concedes that the district court erred by issuing a postconviction probationary DANCO.

Thus, we reverse the district court's issuance of the postconviction probationary DANCO and remand the matter to the district court with instructions to vacate the DANCO. The district court need not conduct a hearing prior to vacating the DANCO

12

and need not provide Boushee with an opportunity to appear before the district court prior to vacating the DANCO.

**Affirmed in part, reversed in part, and remanded.**

13