*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0736**

State of Minnesota,
Respondent,

vs.

Dante Christopher Horton,
Appellant.

**Filed May 16, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-13-21926

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant challenges his convictions of attempted first-degree murder and prohibited person in possession of a firearm, arguing that the district court abused its discretion by admitting testimony about (1) a prior incident between appellant and the

victim, despite lack of notice and clear and convincing evidence and (2) threatening conduct by one of appellant's witnesses toward the victim, without evidence that appellant was implicated in the conduct. We affirm.

**FACTS**

Appellant Dante Christopher Horton was charged with attempted first-degree and second-degree murder and prohibited person in possession of a firearm arising out of an incident that occurred on July 5, 2013. Sometime before July 5, 2013, Horton and the victim, D.T., had an interaction that left D.T. angry with Horton. On July 5, 2013, D.T. went to a convenience store and saw Horton inside the store. D.T. confronted Horton outside the store, and D.T. and Horton, assisted by M.H., began fighting. D.T. heard Horton tell M.H. to "get the gun out of the car." D.T. ran to Horton's car to prevent M.H. from getting a gun, but Horton leaned into the driver's side and appeared to search for something, so D.T. backed away and disappeared. Horton and M.H. drove away in a gray SUV-type car. D.T. reappeared shortly afterward and rode his bike away from the store. A security camera recorded the incident, and the recording was introduced at trial.

D.T. rode his bike directly to his apartment about three minutes away from the store. He entered his apartment building through the rear security door, which was not locked because the door was broken. As he put his key in the door to his apartment, someone said his name. He turned around and recognized Horton; Horton was holding a handgun and began shooting at him. Horton fired several times, hitting D.T. in the buttocks.

D.T. consistently identified the shooter as Horton in statements to his family and to responding police officers. D.T.'s sister, De.T., had been sitting in the parking lot outside the apartment building. She did not see her brother arrive home, but she saw a car pull into the parking lot and a man, whom she later identified as Horton, get out of the car and run into the rear door of the apartment building, followed by the sound of several gunshots. She described the car as a gray or silver small SUV. De.T. was slightly acquainted with Horton and identified him from a photographic lineup.

At trial, the state sought to introduce evidence of the earlier incident between D.T. and Horton, alleging that Horton had robbed D.T. The state wanted to offer the evidence to show a motive for the shooting and to confirm identification of Horton as the shooter. Horton objected to introduction of the evidence. The district court found that the state failed to give a timely notice and that the incident was not supported by clear and convincing evidence, both requirements of Minn. R. Evid. 404(b), which governs admission of evidence of other crimes, wrongs, or bad acts. The district court also found that it was "character evidence" that was unfairly prejudicial. But because the district court concluded that the state should be able to provide "some kind of a context," it permitted D.T. to describe the incident as an altercation in which D.T. felt he was wrongly treated. Finally, the district court concluded that it was "relationship evidence" and "[t]he fact that there was a strained relationship between [Horton] and [D.T.] is relevant and admissible." Ultimately, D.T. testified that he had "an altercation with [Horton], as far as there was a misunderstanding between us," he "had some personal

3

thoughts about him . . . as far as a situation that [they] hadn't dealt with," and he was "mad" at him.

At trial, D.T. testified that he saw M.H., whom he did not know before the fight at the convenience store, shortly after the shooting. He said that he felt "threatened" by M.H. and reported it to the police. The district court admitted the testimony over Horton's objection.

Horton was convicted by a jury of all three offenses and sentenced to concurrent sentences of 230 months and 60 months on the attempted first-degree murder and prohibited-person convictions. This appeal followed.

## D E C I S I O N

### I.

Horton argues that the district court abused its discretion by admitting prejudicial Rule 404(b)-type evidence for which the state had not given the required notice. Under Minn. R. Evid. 404(b), evidence of other crimes, wrongs, or bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith," although it is admissible for certain other purposes. Rule 404(b) sets out a procedure that must be followed before such evidence can be admitted, including notice to the defendant.

We review the district court's evidentiary decisions for an abuse of discretion. *State v. Riddley*, 776 N.W.2d 419, 424 (Minn. 2009). "On appeal, the defendant has the burden of proving both that the [district] court abused its discretion in admitting the

4

evidence and that the defendant was thereby prejudiced." *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997).

The district court admitted the testimony referring to the earlier incident between Horton and D.T. as "relationship evidence." Although "relationship evidence" often refers to Minn. Stat. § 634.20 (2014), which permits admission of evidence "of similar conduct by the accused against the victim of domestic abuse," caselaw also establishes another, non-domestic type of relationship evidence, which can be offered to show "the strained relationship between the accused and the victim." *State v. Loving*, 775 N.W.2d 872, 880 (Minn. 2009) (quotation omitted); *State v. Hormann*, 805 N.W.2d 883, 890 (Minn. App. 2011), *review denied* (Minn. Jan. 17, 2012). This type of evidence does not require a Rule 404(b) notice. *Id.* But the district court must find clear and convincing evidence of the defendant's prior conduct. *Id.*

The district court found that the state had not shown by clear and convincing evidence that Horton robbed D.T. two months before the charged crime, but concluded that it was permissible to establish some kind of context for the strained relationship between the two. The district court cautioned the state that D.T. was not to discuss robbery or "push too far on what that strained relationship was about."

The district court abused its discretion by admitting evidence about a strained relationship after it found that there was not clear and convincing evidence of the earlier incident. *See id.* But Horton has the burden of showing not only that the court abused its discretion but also that he was prejudiced by the court's action. "[U]nfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage."

5

*State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011), *review denied* (Minn. Sept. 28, 2011). D.T.'s statements, referring to an "altercation," "a misunderstanding," "personal thoughts" about an unresolved "situation," and a feeling of being "mad," are too general to be prejudicial, particularly after the jury viewed the security recording of a fistfight between D.T. and Horton. Horton has failed to establish that he was prejudiced by this very limited testimony.

## II.

Horton argues that the district court abused its discretion by permitting D.T. to testify that he encountered M.H. two days after the shooting and that D.T. felt threatened by that encounter. D.T. stated that he went home and reported the encounter to the police and an investigator for the county. D.T. did not testify about the subject matter of the encounter. Horton argues that this evidence was both irrelevant and prejudicial because M.H.'s conduct was not tied to Horton but introduction of the evidence may have caused the jury to feel that he was the source of the threat. The state asserts that the evidence was introduced to show that M.H., who was Horton's alibi witness, was biased based on D.T.'s feeling of being threatened.

"Bias is a catchall term describing attitudes, feelings, or emotions of a witness that might affect her testimony, leading her to be more or less favorable to the position of a party for reasons other than the merits." *State v. Lanz-Terry*, 535 N.W.2d 635, 640 (Minn. 1995) (quotation omitted).

> Evidence of bias may properly show hatred or enmity between a witness and a party. The partiality or bias of a witness is always relevant as discrediting the witness and affecting the

6

weight of his testimony. . . [E]xtrinsic evidence of nonconviction misconduct may be admitted to show that a witness is motivated by bias, interest or influence.

*Id.* (quotations and citations omitted).

Generally, threats made to a witness are introduced to demonstrate why a witness is reluctant to testify, changes his story, or lacks credibility. *See State v. McArthur*, 730 N.W.2d 44, 51-52 (Minn. 2007) (discussing probative value of evidence of threats or fears). The district court, when deciding whether evidence of threats may be introduced, must make "case-by-case determinations," and must "fashion appropriate safeguards in the event such evidence is admitted." *Id.* at 52.

D.T. was not hesitant about testifying and had not changed his story. But the evidence was relevant to M.H.'s credibility as an alibi witness because it tended to show that he was hostile to D.T. and aligned with Horton's interests. As such, the evidence is probative. Horton has the burden of demonstrating prejudice; it is unlikely that this limited testimony "substantially influenced the jury's decision." *Loving*, 775 N.W.2d at 879.

**Affirmed.**