*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0438**

State of Minnesota,
Respondent,

vs.

William Louis Miller,
Appellant.

**Filed March 2, 2026**
**Affirmed**
**Bond, Judge**

Dakota County District Court
File No. 19HA-CR-22-1541

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Cory B. Monnens, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bond, Presiding Judge; Connolly, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

In this direct appeal from the judgment of conviction for fifth-degree criminal sexual conduct, appellant argues he is entitled to a new trial because the district court abused its

discretion by admitting evidence that the victim's mother sought a restraining order against appellant after the offense. We affirm.

## FACTS

In March 2022, 12-year-old A.D. lived with her mother in a two-story duplex. A.D.'s grandmother and her grandmother's boyfriend, appellant William Louis Miller, lived in the upstairs unit. Miller had lived there for years, and the family generally had a good relationship with him. Though the upstairs unit could only be accessed by a separate entry, it was common for the parties to enter one another's living space.

One day in late March, A.D.'s mother asked A.D.'s grandmother and Miller to check in on A.D. while A.D. was home alone. Miller entered the downstairs unit, where A.D. was doing her homework on the couch. After helping A.D. with her homework, Miller sat at the opposite end of the couch and watched television. A.D. saw that Miller had his hand in his pants and was making up and down motions "like boys do" for around ten minutes. During this time, Miller asked A.D. if she had hair on her "private part" and if she was wet. A.D. asked Miller to go back upstairs, which he did.

A short time later, A.D. told a friend about the incident. The friend reported it to an adult, who in turn contacted A.D.'s mother. After speaking with A.D., A.D.'s mother confronted Miller. Miller denied the incident took place. A.D.'s mother filed a petition

for a restraining order[1] and contacted the police. A police officer later delivered paperwork related to the restraining order to Miller.

During a recorded interview with a child-protection investigator, A.D. described the incident and stated she recognized that Miller was masturbating and that he eventually took his penis out of his pants. A.D. reported that she "felt weird" around Miller, preferred not to be around him, and her mother filed for a restraining order.

In a recorded phone interview with the police, Miller denied A.D.'s version of events and stated that A.D. walked into the living room of the downstairs unit as he was masturbating. Around the same time as the phone interview, Miller admitted to A.D.'s mother that the incident took place and apologized.

Respondent State of Minnesota charged Miller with fifth-degree criminal sexual conduct in violation of Minn. Stat. § 609.3451, subd. 1a(2) (2020), and the case proceeded to a jury trial. At trial, the jury heard testimony from A.D., her friend, A.D.'s mother, the child-protection investigator, and two police officers, and recordings of A.D.'s interview with the child-protection investigator and Miller's statement to police were received as exhibits. The jury found Miller guilty, and the district court sentenced him to 364 days in jail.

Miller appeals.

---

[1] As we explain below, A.D.'s mother sought a harassment restraining order. We use "restraining order" when describing the evidence received at trial because that is the terminology used by the witnesses in their testimony.

**DECISION**

Miller argues that the district court committed reversible error by admitting irrelevant and unfairly prejudicial evidence that A.D.'s mother sought a restraining order. "Evidentiary rulings rest within the sound discretion of the district court," and appellate courts "will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). A district court abuses its discretion when its decision is based on an "erroneous view of the law or is against logic and the facts in the record." *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017). Even if evidence was erroneously admitted, an appellate court will not reverse unless the appellant shows there is a "reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Bigbear*, 10 N.W.3d 48, 54 (Minn. 2024) (quotation omitted).

Generally, relevant evidence is admissible. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401; *see State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011) ("A fact is relevant if, when taken alone or in connection of other facts, it warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." (quotation omitted)), *rev. denied* (Minn. Sept. 28, 2011). "Rule 401 reflects a minimal relevancy approach." *State v. Hallmark*, 927 N.W.2d 281, 298 (Minn. 2019). Even relevant evidence, however, may be excluded, if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

4

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403.

In this case, the state sought to introduce evidence that A.D.'s mother had obtained a harassment restraining order against Miller, arguing that it provided context for Miller's statements to police and to demonstrate A.D.'s mother's reaction to the offense. Miller objected on the grounds that evidence of the restraining order was irrelevant and unfairly prejudicial because it "endorses that [the offense] happened." The district court ruled that the state could elicit testimony that A.D.'s mother filed for a restraining order and that paperwork related to the filing was delivered to Miller to "provide context for what [Miller] was talking about in his statement [with police]."[2] But the district court determined that evidence that a restraining order was actually issued was not admissible, reasoning that allowing the jury to hear that a court had issued a restraining order would be unfairly prejudicial because Miller "did not have a chance at that time to defend himself or to challenge the [ex parte] order," and because the "jury could leap to a different space that we don't want them to go."

At trial, the jury heard testimony from A.D.'s mother that, after Miller admitted that something had happened and apologized, she "filed for a restraining order" because she did not want Miller to be around A.D. In addition, a police officer testified that he went to Miller's residence and gave Miller "paperwork related to a restraining order that [A.D.'s mother] had filed."

---

[2] Miller agreed that, if the district court overruled his objection to admitting evidence of the restraining order, this was the "correct sanitization" of the evidence.

Miller argues that evidence that A.D.'s mother sought a restraining order is irrelevant because it has "nothing to do with whether the alleged offense occurred." We disagree. In his statement to police, Miller disputed that anything serious happened with A.D., stating that "if it was a big deal, [A.D.] would have said something to her mom." When police told Miller that A.D.'s version of events was different than Miller's, he stated, "I read what you got," and that "as far as . . . touching her and the sh-t that I read, . . . I just didn't do that sh-t." The parties agreed that Miller was "referencing something written" when he gave this statement to police. As the district court determined, evidence that A.D.'s mother filed a petition for a restraining order and Miller received paperwork related to the restraining order was relevant to "provide context for what [Miller] was talking about in his statement [with police]" and, by extension, his credibility. Given the "minimal relevancy" requirements of Minn. R. Evid. 401, the district court did not abuse its discretion by finding the restraining-order evidence relevant. *See* Minn. R. Evid. 401 (stating that relevant evidence must only have "any tendency" to make a fact more or less probable).

Miller argues that evidence that A.D.'s mother sought a restraining order, even if relevant, should have been excluded under Minn. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Unfair prejudice "refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Hallmark*, 927 N.W.2d at 299 (quotation omitted). Persuasion by illegitimate means includes "leading the jury to improperly conclude that [the defendant] has a propensity to behave criminally and should now be convicted, and punished, for the

6

charged offenses." *State v. Hormann*, 805 N.W.2d 883, 891 (Minn. App. 2011), *rev. denied* (Minn. Jan. 17, 2012). But unfair prejudice does not mean "damage to the opponent's case that results from the legitimate probative force of the evidence." *State v. Mosley*, 853 N.W.2d 789, 797 (Minn. 2014) (quotation omitted).

Miller contends that the restraining-order evidence was unfairly prejudicial because it allowed the jury to speculate that Miller had harassed A.D. or engaged in other bad acts warranting a restraining order. On this record, Miller's argument is unavailing. A.D.'s mother testified that she sought a restraining order in direct response to the offense. A.D. did not testify that Miller committed other bad acts or harassed her, and the jury heard no such evidence from any other witness. And, significantly, the district court recognized the prejudicial nature of the restraining-order evidence and only allowed the state to introduce evidence that A.D.'s mother had *filed* for a restraining order—not that one had been issued by a court—and that Miller received paperwork related to A.D.'s mother's filing. In so doing, the district court appropriately mitigated any risk of unfair prejudice. The restraining-order evidence, while prejudicial, was not unfairly prejudicial because it did not persuade through illegitimate means. *See Hallmark*, 927 N.W.2d at 299.

Because the limited restraining-order evidence was relevant and its probative value was not substantially outweighed by unfair prejudice, the district court did not abuse its discretion.

**Affirmed.**